BLALOCK *et al. v.* ADAMS *et al.,* commissioners, *et al.*

1. It is not essential to the validity of a levy of a county tax for a given purpose that a contract for effecting such purpose has previously been made by the proper county authorities.

2. The proper county authorities can legally levy a tax not exceeding 100 per cent. of the State tax to pay accumulated debts and current expenses; and an item of a tax levy for such purposes should not be considered in determining whether the county authorities have exceeded their power to levy taxes for county purposes under the Civil Code (1910), § 508.

3. All presumptions are in favor of the legality and validity of a tax.

4. Formerly contracts for the erection of bridges of the character of those referred to in the Civil Code, § 387, had to be let to the highest bidder at public outcry after due advertisement, and debts contracted otherwise in building such bridges would not be valid claims against the county for the payment of which a tax could be levied; but since the act of August 17, 1920 (Ga. Laws 1920, p. 58), county commissioners in any county having a chain-gang can purchase material for, and use the convicts in, building or repairing any public bridge, causeway, or other public works without letting out the contracts therefor.

5. Plaintiffs failing to show that debts contracted by the county commissioners were for the erection of bridges of the character referred to in the Civil Code, § 387, or that such debts were contracted prior to August 17, 1920, they failed to carry the burden of establishing the illegality of an item of the tax levied for the purpose of paying such debts.

6. This court will not consider the legality of an item of a tax levy which was not attacked by the plaintiffs in their petition for injunction.

7. The chancellor did not err in refusing to enjoin the tax levy sought to be enjoined by the plaintiffs in this case.

No. 2873. SEPTEMBER 30, 1922.

Petition for injunction. Before Judge Searcy. Fayette superior court. September 21, 1921.

On September 7, 1920, the commissioners of roads and revenues of Fayette County levied a tax of (1) 75 cents on the $100 of taxable property in said county, for building and repairing a court-house, bridges, and other public improvements according to contract; (2) 7 cents on the $100, to pay sheriffs', jailors', and other officers' fees to which they may be legally entitled from the county; (3) 3 cents on the $100, to pay the expenses of court bailiffs, non-resident witnesses in criminal cases, servant hire, stationery and the like; (4) 5 cents on the $100, to pay jurors; (5) 10 cents on the $100, to pay expenses incurred in supporting paupers of the county; (6) 40 cents on the $100, to pay expenses of public roads under the alternative road law; (7) 5 cents on the $100, to pay expenses of casualty deficiency existing in the county; and (8) 10 cents on the $100, to pay any other legal indebtedness of the county, making a total of $1.55 on the $100. A. O. Blalock and others filed their petition praying for injunction to prevent the sheriff from selling property of such of the petitioners as had been levied upon under tax fi. fas. issued against them for their taxes under said levy, to restrain the tax-collector from delivering to the sheriff tax fi. fas. issued against others of the petitioners for their taxes under said levy for the year 1920, and to enjoin the sheriff from levying them. They further prayed that the levy of taxes for general county purposes be decreed to be excessive to the extent of 50 cents on the $1,000 of taxable property; that the levy of the tax for such purposes, in excess of $2.50 on the $1,000, be perpetually enjoined; that the first item of said levy be decreed to be illegal and void, and its collection be perpetually enjoined; and that the petitioners have such other relief as may be proper. They alleged that items 2, 3, 4, 7, and 8 are items properly classified under the head of "general county purposes," and amount to $3 on the $1,000 of taxable property, which the commissioners, in the absence of a recommendation of the grand jury, had no authority to levy in excess of fifty per cent. of the State tax, said tax for 1920 being $5 on the $1,000, fifty per cent. of which would be $2.50 on the $1,000, for which reason these items are excessive and illegal to the extent of 50 cents on the $1,000 of taxable property; that the first item of said levy " is illegal, contrary to law, and without any authority of law;" that the county commissioners conceived the

idea that they would undertake to build up a fund for the purpose at some future time of building a court-house, and beginning in 1916 did, with such purpose in mind, levy the first tax for such purpose, intending to accumulate a fund sufficient to build a court-house without the issuance of bonds, but such fund they expended for other and different purposes, and no fund was accumulated for the original purpose. At the time of said tax levy there did not exist and do not now exist any outstanding contracts for the building or repairing of the court-house, for the erection of buildings, for ferries, or for other public improvements; and the first item of the levy represents the effort on the part of the county commissioners to raise revenue for other and different purposes than that which appears on its face. The tax-collector up to January 1, 1921, who was charged with the collection of taxes for 1920, issued executions against petitioners for their State and county taxes for 1920, and delivered them to the sheriff, who has levied them and is proceeding to advertise the property of petitioners for sale. The county is only entitled to collect the sum of $7.50 on the $1,000 of taxable property,— that is to say, $4 for the public-road fund, $1 for the support of the poor, and $2.50 for general county purposes; and the tax levied for county purposes is illegal and excessive to the extent of $8 on the $1,000 of taxable property.

Petitioners offered and now offer to pay taxes upon the basis admitted to be due. They allege that the first item of this levy was made by the commissioners with knowledge that there were no existing contracts in writing and entered on the minutes of the ordinary or commissioners, which would authorize the levy of a tax for the purpose therein named; that this levy was not made with reference to any contemplated contracts in compliance with the law, but was so made that it might appear legal on its face, and with the intention of collecting said tax and applying same for other and different purposes. For the past four years the commissioners have collected taxes under an identical item with the one of 1920, and have expended the same for other and different purposes. A new board of county commissioners entered office on January 1, 1921, who found that there were outstanding certain warrants issued for portions of bridges purchased as material, and not under contract, for the erection of bridges; and

the new board has refused to construe this item as applicable to payment on the purchase-price of the bridge materials, but claims that such fund cannot be applied for such purposes. At the time of said levy, there was no necessity for the erection of a new court-house or of new bridges, and no necessity to repair the court-house, bridges, ferries, or other public improvements; and the commissioners abused their discretion in levying a tax for 1920 for such purposes. Petitioners pray that the board of county commissioners be made parties defendant. The commissioners levied for the year 1920 $4 on the $1,000, to pay expenses of the public roads under the alternative road law, which is the extreme limit allowed by law. The levy of the tax to build and repair a court-house, bridges, ferries, and other public improvements was made in order to raise revenue which might be diverted in part or in whole to the road fund, thus effecting by indirection that which could not be done directly. At the time of said levy there was no legal indebtedness of the county as provided by the constitution and laws of the State, and the item of the levy for such purpose is without law, not having the sanction of popular vote, and is contrary to art. 7, sec. 7, par. 1, of the constitution, which prohibits the county from creating a debt without such approval. Petitioners have paid all of said tax levy admitted by them to be due, and have paid in addition thereto 50 cents on the $1,000, to pay any legal indebtedness against the county. This proceeding is to enjoin the collection of any balance of taxes against them for the year 1920, based on the legal items herein referred to, aggregating $8 on the $1,000.

In their answer the defendants denied the material allegations of the petition. They set up that item 7 of the levy, to meet a casual deficiency in the revenue of the county, was not to be classified under the head of taxes for general county purposes. They denied that the items of the levy, properly classified, exceed one half of the State tax for 1920. They admitted that the plaintiffs failed to pay their taxes for the year 1920, that the tax-collector issued executions against them, as alleged, and that the sheriff had levied on and was proceeding to advertise and sell property of the plaintiffs. They alleged that each item of the tax levy was legal. They denied that the plaintiffs had tendered any part of the tax assessed against them. They further set up that

during the year 1920 there were unusual storms and unprecedent-
ed rains in the county, which raised the watercourses beyond
any previous high-water mark, whereby practically every bridge
in the county was swept away and completely destroyed. The
county authorities were compelled to erect thirty-six · or more
new bridges, which necessitated the levy of a tax sufficient to cover
that cost. The commissioners levied $7.50 on each $1,000 of tax-
able property, as set forth in the first item of the levy, for the sole
purpose of replacing bridges so destroyed by the flood in 1920,
and said levy was made for no other purpose; the taxes so far
collected under said item have been expended in replacing said
bridges; and there are yet outstanding several thousand dollars
covering the cost of construction thereof. When all the money
collected under said item has been applied to this debt, there will
remain something like $5,000 unpaid. The commissioners were
compelled to borrow money in 1920 to meet casual deficiencies of
the revenue of the county, arising from unforeseen and unexpected
advances in the prices of all commodities which the county was
compelled to purchase during that year; and as a result of having
had to borrow that money they made a levy of 5 cents on the $100,
as set forth in item 7 of the levy.

The plaintiffs introduced evidence showing that there did not
appear upon the minutes of the county commissioners for 1918,
1919, and 1920 any contract between the county and any other
person with respect to a court-house, bridges, ferries, or other
public improvements; that the money which was levied for a
court-house in 1918 and 1919 was used for other purposes, but the
same was not kept in a separate fund; and that the county com-
missioners were setting aside 25 cents on the $100, levied for the
years 1918, 1919, and 1920, for the purpose of building a new
court-house, and the remainder was used for road work. The
taxes collected under item 1 for 1918, 1919, and 1920 were kept
under one designation of fund for bridge, court-house, jail, and
other public improvements. On March 19, 1918, this fund was
overdrawn to the amount of $94.19. On Sept. 16, 1918, it was
overdrawn $76.23. On Sept. 13, 1919, it was overdrawn $559.30.
On March 19, 1920, that fund had to its credit $10,741.59. On
Sept. 21, 1920, that fund had a credit balance of $711.23. On
Dec. 31, 1920, it was overdrawn $27.17. On March 19, 1921,

the fund had to its credit $11,760, after 1920 taxes for this purpose were credited in 1921, and that money is still on hand. In December, 1919, and early in 1920 there were heavy freshets in the streams of the county, which practically washed away every bridge therein. The commissioners took out between $35,000 and $40,000 to put these bridges back. If the outstanding debts against the bridge fund were paid, there would remain only about $4,000 in the bridge fund, without allowing anything for the court-house under the 1919 levy, and without accounting for $6,000 which was levied for that purpose in 1918. If the outstanding warrants for bridge work were paid and $6,000 retained for a new court-house fund, there would be approximately a deficit in the bridge fund of $2,000. The commissioners used money collected for the building of a new court-house, and restored the bridges which were washed away in the latter part of 1919 and early in 1920. The cost of supplies and materials was greater than the commissioners expected when they made the levy in 1919, which caused a deficiency in funds raised for bridges. The taxable property of the county for 1918 was $2,278,857; for 1919 it was $2,369,616; in 1920 it was $3,269,572.

For the defendants it was shown, that, in order to meet the expense of replacing the bridges washed away by the unusual rains, it was necessary to levy a tax of 75 cents on the $100. This was not sufficient, as defendants afterwards ascertained, to build all the bridges, with the result that at the end of the year there were still outstanding several thousand dollars, as a result of replacing these bridges. During 1920, to meet casual deficiencies of revenue, the commissioners borrowed over $2,000. This was due to the fact that there was an unforeseen and unexpected advance in the prices of all commodities which the county was compelled to purchase during the year. None of the petitioners have ever paid, offered to pay, or tendered to the tax-collector any part of the taxes levied for 1920. When the new commissioners took charge of the county affairs on January 1, 1921, the entire amount levied and collected under item 1 of the tax levy of 1920 had been expended for the construction of new bridges in the county which had been washed away, and there was a deficit of $7,000.

The court denied the injunction prayed for. Error was assigned on this judgment.

*E. A. Neely,* for plaintiffs.   *J. W. Culpepper,* for defendants.

FISH, C. J. (after stating the foregoing facts.)

1.   The first attack made on the tax levy is, that item 1, which ·
levies $7.50 on the $1000 of taxable property, " to build a court-
house, bridges, ferries, and other public improvements, according
to contract," is not authorized by law, in that there was no con-
tract in writing and on the minutes of the county commissioners
providing for the doing of any. of the things for which this item
was levied.   The argument of counsel for the plaintiffs is, that
all contracts with the county must be in writing and be spread
upon the minutes of the commissioners (Civil Code of 1910, §
386) ; that contracts for the purposes for which this item was
levied must be let to the lowest bidder, at public outcry, after
due advertisement as provided by law (§ 387) ; that this require-
ment is mandatory (*Dyer* v. *Erwin,* 106 *Ga.* 845, 33 S. E. 63) ;
and that as no such contracts existed, this item of the levy was
illegal.   This position is untenable.   It is not essential to the
validity of a tax levy for the purposes specified in this item of the
levy, that contracts for effectuating such purposes have been
previously made.   *Gaines* v. *Dyer,* 128 *Ga.* 585 (6 *a*) (58 S. E.
175).   Plaintiffs further urge that the tax levied in this item, while
ostensibly and on its face levied for building a new court-house,
was so levied only to make it appear legal, but with the intention
on the part of the commissioners of using the funds raised there-
by for other and different purposes; thus doing by indirection
what could not be accomplished directly and in an open-handed
way.   There was evidence which authorized the chancellor to
reach a different conclusion; and we cannot hold that a different
finding was demanded.

2.   It is next insisted that item 2 of this levy, of 70 cents on
the $1,000, " to pay sheriffs', jailors', and other officers' fees,"
item 3 of the levy, of 30 cents on the $1,000, " to pay the expenses
of the county for bailiffs at court," item 4, of 50 cents on the
$1,000, " to pay jurors a per diem compensation," item 7, of
50 cents on the $1,000, " to pay the expenses of casual deficiency,"
and item 8, of $1 on the $1,000, aggregate $3 on the $1,000 of ·
taxable property, and exceed 50 per cent. of the State tax; for
which reason, the plaintiffs assert, the levy is illegal and void.
It is true these county commissioners cannot raise a tax for coun-

ty purposes, over and above the taxes authorized in §§ 504, 506, and 507 of the Civil Code of 1910, which shall exceed fifty per cent. of the State tax (§ 508). The flaw in the position of the plaintiffs is that they include in their calculation item 8 of the levy, to pay other legal indebtedness of the county. This item should have been excluded. The proper county authorities can legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses, without a recommendation of the grand jury. Civil Code (1910), § 507; *Sheffield* v. *Chancy*, 138 *Ga.* 677, 686 (75 S. E. 1112); *Wright* v. *So. Ry. Co.*, 146 *Ga.* 581 (5) (91 S. E. 681). Excluding this item, the remainder of the levy did not exceed 50 per cent. of the State tax. So we reach the conclusion that the trial judge did not err in refusing the injunction on this ground.

3. Item 8 of the levy is assailed upon the ground that any debts for the payment of which this item was levied were void because they were contracted in violation of art. 7, sec. 7, par. 1, of the constitution of this State, which prohibits the creation of debts by the county without the approval of a popular vote; and that the county commissioners were without authority of law to levy a tax to pay such void indebtedness. All presumptions must be indulged in favor of the legality and validity of the tax. *Wright* v. *So. Ry. Co.*, supra. So the burden was on the plaintiffs to make good this contention.

Counsel for the plaintiffs relies upon the decision in *Garrison* v. *Perkins*, 137 *Ga.* 744 (74 S. E. 541), to support this contention. In that case this court held, that the county authorities could not to build bridges of the character referred to in section 387 of the Code of 1910, except by letting out the contracts therefor at public outcry; and that debts contracted in the purchase of materials for the construction of bridges of that character were not valid charges against the county. That decision was good law at that date; but the ruling therein made has been changed by a subsequent statute. By the act of August 17, 1920 (Ga. Laws 1920, p. 58), it is enacted "that in any county having a chain-gang the county commissioners of such county, or other persons having charge of such works, shall have the power and authority to purchase material for and use the convicts in building or repairing any public bridge, causeway, or other public works in

said county; and in such cases the three preceding sections, paragraphs 386, 387, and 388, shall not apply." Since the passage of this act the county commissioners can buy material, and build or repair public bridges with chain-gang convicts, without letting the contract for their construction at public outcry. This tax levy was made on September 7, 1920, shortly after the passage of this act; but the act took effect when approved by the Governor. *Epstin* v. *Lavenson,* 79 *Ga.* 718 (2) (4 S. E. 328). As the burden was on the plaintiffs to show the illegality of this item of the levy, it was incumbent upon them to show that these debts were contracted for the erection of bridges of the character of those referred to in section 387 of the Civil Code, and that they were made prior to the passage of the act of 1920. The plaintiffs failing to carry this burden, the judge did not err in refusing to enjoin this item of the tax levy.

4. Counsel for plaintiffs in his brief urges, that item 7, levying a tax of five cents on the $100 of taxable property of the county, "to pay expenses of casual deficiency existing in the county," is illegal, because there was no such casual deficiency in the county revenue as would authorize such item of the levy. As no attack was made on this item on this ground by the plaintiffs in their petition, we are not called upon to decide the question thus raised.     *Judgment affirmed. All the Justices concur.*