# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1923.

---

### SOUTHWESTERN RAILROAD COMPANY v. WRIGHT, Comptroller-General, et al.

1. The act approved August 17, 1920 (Acts 1920, p. 58), entitled " An act to amend paragraph 389 of the Civil Code of Georgia of 1910, and for other purposes," is not unconstitutional as violating art. 3, sec. 7, par. 17, of the constitution of Georgia (Civil Code of 1910, § 6445), which provides that " No law, or section of the code, shall be amended or repealed by mere reference to its title, or to the number of the section of the code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made."

(a) Neither is it obnoxious to art. 3, section 7, par. 7, of the constitution of Georgia (Civil Code of 1910, § 6437), which provides that " No law or ordinance shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof."

2. The proper county authorities may legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses of the county, without reference to any recommendation of the grand jury. Civil Code of 1910, § 507; *Wright* v. *Southern Ry. Co.*, 146 *Ga.* 581 (5) (91 S. E. 681). And see, in this connection, *Sheffield* v. *Chancy*, 138 *Ga.* 677 (75 S. E. 1112).

3. " If 100 per cent. of the State tax be not sufficient to pay the accumulated debts and current expenses of the county, the authorities have power to raise a tax for county purposes, over and above the tax of 100 per cent. . . and not to exceed 50 per cent. of the State tax for the year it is levied, ' provided two thirds of the grand jury, at the first or spring term of their respective counties, recommend such tax.' Civil Code (1910), § 508; *Sheffield* v. *Chancy*, [supra.] And see

Civil Code (1910), § 513, for enumeration of county purposes for which county taxes may be assessed." *Wright* v. *Southern Ry. Co.*, 146 *Ga.* 581 (6), supra.

(*a*) If from any cause such grand jury is not impaneled, or have adjourned without taking any action thereon, or they refuse to make such recommendation sufficient to discharge any judgment that may have been obtained against the county, or any debt for the payment whereof there is a mandamus, or the necessary current expenses of the year, ordinaries or other proper county authorities may levy the necessary tax without such recommendation. Civil Code (1910), § 510.

4. Applying the foregoing rules to the facts of this case, the court did not err, in view of the amendment to the tax levy, and the elimination by the court of the item of $2 a thousand for the eradication of the cattle-tick, in ordering the levy to proceed against the property of the defendant in execution, only for the amount of such tax levy as was held to have been legal.

(*a*) The case of *Wright* v. *Southern Ry. Co.*, 137 *Ga.* 801 (74 S. E. 529), has no application to a case like the present.

No. 3464. JULY 11, 1923.

Affidavit of illegality of execution. Before Judge Worrill. Early superior court. October 3, 1922.

The proper authorities of Early County made a tax levy during the year 1921 for the following purposes: " 1. To pay the legal indebtedness due, or to become due during the year 1921, or past due, 4.65 mills. 2. To pay the bonded indebtedness of the county, together with interest thereon, 1.00 mills. 3. To repair courthouse, jail, bridges, or other public improvements, 5.00 mills. 4. To pay the expenses of maintaining the poor of the county, .75 mills. 5. To pay sheriffs, jailors, or other county officers' fees that they may be legally entitled to out of the county, 1.75 mills. 6. To pay coroner's fees that may be due them by the county for holding inquests, .1 mills. 7. To pay the expenses of the county for court bailiffs, non-resident witnesses in original cases, fuel, servant's hire, stationery and the like, .3 mills. 8. To pay jurors their per diem compensation, .45 mills. 9. To meet the expenses of the county in maintaining, building, repairing, and opening up public roads, 4.00 mills. 10. To pay expenses of eradicating cattle-tick, 2.00 mills." The Southwestern Railroad Company paid all of the taxes assessed against it under this levy, except the sum of $2,223.35, which it refused to pay. The comptroller-general of the State thereupon issued a tax fi. fa. against the railroad company, which was duly levied, and the railroad company filed an affidavit of illegality thereto. The comptroller-general thereupon filed a

demurrer to the illegality, and also a traverse. The illegality was subsequently amended; and the case was heard and determined by the trial judge without the intervention of a jury, upon the pleadings and certain admissions. The illegality as amended was as follows:

"Before me personally appeared J. F. Minis, who on oath deposes and says as follows:

"I. Deponent is president of the Southwestern Railroad Company.

"II. In 1921 Early County, Georgia, levied a tax on the taxable property of said county, a copy of the levy being attached to this affidavit and marked Exhibit A.

"III. Southwestern Railroad Company paid, within the time allowed by law, all of the tax claimed to be due by it under said levy, with the exception of $2,223.34, which represents a tax of $7.25 a thousand on a valuation of $306,668.00 on Southwestern Railroad Company's property in Early County Georgia, which sum of $2,223.34 Southwestern Railroad Company has refused to pay.

"IV. On April 5, 1922, the Comptroller-General of Georgia issued a tax fi. fa. against Southwestern Railroad Company for said $2,223.34, which was levied on April 15, 1922, by J. T. Freeman, deputy sheriff of Early County, on the property of the Southwestern Railroad Company which is described in the said deputy sheriff's entry of levy. A copy of the tax fi. fa. and the entry of levy thereon is attached to and made a part of this affidavit, marked exhibit B.

"V. Said fi. fa. issued illegally and is proceeding illegally, and the Southwestern Railroad Company denies its liability for said tax, for the following reasons: (1) The tax levied for general county purposes by items 5, 6, 7, and 8 of the tax levy amounts to $2.60 a thousand, which exceeds the legal limit of 50% of the State tax of $5.00 a thousand for 1921 by 10 c. a thousand, and the levy is therefore illegal and excessive to the extent of 10 c. a thousand. (2) In addition to the tax of $2.60 a thousand for general county purposes, described in the preceding paragraph, the county has levied, in item 1 of the levy, a tax of $4.65 a thousand 'to pay the legal indebtedness due, or to become due, during the year 1921, or past due.' The sum of the levy for general county purposes and for the payment of debts is $7.25 a thousand. A

county can not levy more than 100% of the State tax (that is $5.00 a thousand in 1921) for said purposes, unless the grand jury at the first or spring term so recommends. The grand jury of Early County did not recommend at its first or spring term, 1921, the tax of $7.25 a thousand for the payment of debts and general county purposes, and deponent is advised and avers that no previous grand jury has made any such recommendation. Said tax of $7.25 is therefore illegal and excessive to the amount of $2.65 a thousand. (3) In item 3 of the levy Early County levied a tax of $5.00 a thousand ' to repair court-house, jail, bridges, or other public improvements.' Deponent is informed and believes and now alleges that this levy was intended to raise approximately $24,700.00, of which the county contracted to expend approximately $5,700.00 (equal to a levy of approximately $1.15 a thousand) on repairs to the county court-house; and has expended or contracted to expend the remainder of approximately $19,000.00 (equal to a levy of approximately $3.85 a thousand) in the purchase of bridge and road materials of various kinds and for the support of the county convicts while engaged in the work of building or repairing public bridges, causeways, or other public works.

" 1. Deponent says the levy of $5.00 a thousand for the purposes set out in item 3 of the levy is illegal and void, because: (a) Said levy does not separate the funds to be raised therefrom which are to be expended for the work done according to contract from the funds which are to be expended in the purchase of materials and the support of convicts while engaged on the public works. (b) Said levy does not show that any portion of the funds to be raised thereby are to be expended according to contract. (c) Because said levy does not show that any portion of the funds to be raised thereby are to be expended in the purchase of materials otherwise than in accordance with the' contract. (d) Because said levy does not show that any part of the funds to be raised thereby are to be expended in the support of convicts, and does not show what part of said funds is to be expended or for how long the said convicts are to be supported by the money raised from said levy, or on what work they will be engaged while being so supported.

" 2. Deponent says that so much of said levy of $5.00 a thousand under item 3 as was to be used, or as was used, for repairs

on the county court-house (which deponent is informed and believes to be $1.15 a thousand) was illegal, because: (a) The levy under item 3 does not show how much thereof was to be expended in repairs on the court-house. (b) Said levy does not show that any part thereof, or what percentage thereof, was to be expended according to contract. (c) The contract for the work on the court-house was not let, made, entered, and advertised as required in sections 386-389 inclusive of Park's Code of Georgia.

" 3. Deponent further says that any portion of the levy of $5.00 a thousand under item 3 which was to be expended for the purchase of materials for, and the support and maintenance of convicts while engaged on the building or repairing of bridges, causeways, or other public works (which deponent is informed and believes amounts to $3.85 a thousand), is illegal, because: (a) There is no authority in law for the levy of a tax to pay for the purchase of materials for and support and maintenance of convicts while engaged upon the building and repairing of bridges, causeways, or other public works, except when said building and repairing can be done at a less cost than $300.00, and deponent says that the building and repairing for which the material hereinbefore mentioned was purchased cost $300.00 or more, and that the material itself cost $300.00 or more, and that said work should have been done and said materials should have been purchased by contract, as provided in sections 386-389 inclusive of Park's Code of Georgia. (b) The act of the legislature of Georgia, approved August 17, 1920 (Acts of 1920, p. 58) limits the authority of the county commissioners, in making public improvements provided for in Code sections 386-389 inclusive and included in this levy, to do such work where the cost thereof is in excess of $300.00, unless notice of the contract is given by publication and the same is entered into [in] the manner required in sections 386-389 inclusive, of the Code. (c) Unless said act, approved August 17, 1920, is so construed, said act is unconstitutional, null and void, because in violation of the following provisions of the constitution of Georgia: [Civil Code, §§ 6437, 6445, quoted in the first head-note]. Said act of 1920 in its caption purports to amend paragraph 386, Civil Code of Georgia of 1910, yet in the body of the act it purports to amend §§ 386, 387, and 388 of the Civil Code of Georgia of 1910, and no reference to such code sections is given

in the caption referred to, nor any intention shown to modify or amend said paragraphs 386, 387 and 388 of the Code. (*d*) The power of the county authorities, if any, to use the county's funds for the purchase of materials for and maintenance of convicts while engaged upon the building and repairing of bridges, causeways, and other public works is limited to funds arising from taxes specifically levied for such purposes, and no tax was specifically levied, either in item 3 or elsewhere in said levy, for such purpose. (*e*) Item 3 of the levy does not show what part thereof was specifically levied for the support of convicts, as hereinbefore set out. (*f*) Because the building and repairing of bridges, causeways, and other public works which the county intended to do, or has done, with approximately $3.85 a thousand of the tax of $5.00 a thousand levied in item 3 of the levy, was not done according to contract let, advertised, and entered, as provided in sections 386-389 inclusive of Park's Code of Georgia."

The demurrer was in substance as follows: The affidavit sets forth no meritorious complaint of the tax levy on which the execution issued, or any reason why the enforcement of said tax fi. fa. should be arrested. Subdivision (2) of paragraph V of said affidavit is specially demurred to upon the following grounds: (*a*) It sets forth bare conclusions of the pleader, which do not sustain said defendant's ultimate contention that the " Said tax of $7.25 is therefore illegal and excessive to the amount of $2.25 a thousand." (*b*) Its contention that " A county can not levy more than 100% of the State tax (that is, $5.00 a thousand in 1921) for said purposes, unless the grand jury at the first or spring term so recommends," is a bare conclusion, and is erroneous as matter of law. (*c*) The facts alleged do not disclose that the tax complained of was either illegal or excessive, in that there is no allegation that the grand jury recommended any other rate of taxation, or that any grand jury was impaneled or met at the first or spring term, or (if so) that the grand jury did not in fact adjourn without taking any action in regard to the matter, or did not in fact refuse to make such recommendation as was sufficient to discharge such judgments as may have been obtained against the county, or such debts for the payment whereof there was a mandamus, or the necessary current expenses of the year. (*d*) There is no attempt made to negative that the spring term

of the superior court of the county adjourned before the grand jury made their general presentments, nor is there any allegation that the tax complained of exceeded the levy last recommended by the grand jury for such county.

Subdivision (3) of said par. V. is specially demurred to on the ground that the allegations therein afford no reason for arresting the collection of the taxes assessed in item three of the tax levy, in that: (a) The *purposes* for which said tax was laid are fully and definitely specified, in substantially the same language as is employed in the Code section (§ 513) expressly authorizing taxes to be assessed therefor, and there is no requirement of law as to the specification of the manner (by way of contract or otherwise) in which the tax funds thus to be raised were purposes to be "expended" by the county authorities in the repair of the courthouse, jail, bridges, or other public improvements of the county; (b) the act of the legislature approved August 17, 1920 (Acts of 1920, p. 58), authorizes such repairs to be made otherwise than by way of contract, i. e., by the purchase of materials and the use of convict labor, as provided in that act, and the same is not unconstitutional for any of the reasons assigned; and (c) the fact that tax moneys collected for such purposes as are authorized by law may have been expended otherwise than as contemplated by §§ 386-389 of the code would afford to the taxpayer no just cause for refusing to pay the legal tax assessed, but merely the right to make timely objection to an unauthorized *expenditure* of such tax moneys.

The allegation that "The contract for the work on the courthouse was not let, made, entered and advertised as required in sections 386-389 inclusive of Park's Code of Georgia," is specially demurred to on the following grounds: (a) It is too general, indefinite, and equivocal to raise any issue, either of law or of fact, in that the pleader does not undertake to state how or in what manner said contract was let, made, entered, or advertised, nor to disclose in what respects said contract was not let, or made, or entered, or advertised, as required in said sections of the code; and (b) said allegation, if true, constitutes no reason for declaring the *tax levy* illegal or void, the affiant being left to his remedy of making timely objection to an illegal expenditure of

tax moneys under a contract which did not, if illegal for any reason suggested, become binding on the county.

The allegation that "the building and repairing of bridges, causeways, and other public works which the county intended to do, or has done, with approximately $3.85 a thousand of the tax of $5.00 a thousand, levied in item 3 of the levy, was not done according to contracts let, advertised, and entered, as provided in sections 386-389 of Park's Code of Georgia," is specially demurred to upon the following grounds: (*a*) Said allegation presents no reason why the enforcement of the tax fi. fa. in question in the present case should be arrested, or why the tax levy complained of should be declared illegal; (*b*) there is no allegation to the effect that the provisions of the aforesaid act of 1920 were not duly complied with in "the building and repairing of bridges, causeways, and other public works" referred to; and (*c*) even if the county authorities contemplated expending the money to be raised (or have actually expended public funds so raised) in a manner not authorized by law, this would afford ground for complaint by a taxpayer of only the illegal expenditure or contemplated expenditure of tax moneys, and would constitute no ground for successfully resisting payment of a legally imposed tax.

The defendant amended paragraph V of the affidavit of illegality by striking therefrom subdivisions (1) and (2), and inserting in lieu thereof the following: "(1) The tax levied for general county purposes by items 5, 6, 7, 8, 10 of the tax levy amounts to $4.60 a thousand, which exceeds the legal limit of 50 per cent. of the State tax of $5.00 a thousand for 1921 by $2.10 a thousand, and the levy is therefore illegal and excessive to the extent of $2.10 a thousand. (2) In addition to the tax of $4.60 a thousand for general county purposes, described in the preceding paragraph, the county has levied in item 1 of the levy a tax of $4.65 a thousand "to pay the legal indebtedness due, or to become due during the year 1921, or past due." The sum of the levies for general county purposes and for the payment of debts is $9.25 a thousand. A county can not levy more than 100 per cent of the State tax (that is $5.00 a thousand in 1921) for said purposes, unless the grand jury at the first or spring term so recommends. The grand jury of Early County did not recommend at its first or spring term, 1921 (the grand jury at said time and term

being then in session), the tax of $9.25 a thousand for the payment of debts and general county purposes, and deponent is advised and avers that no previous grand jury has made any such recommendation. Said tax of $9.25 a thousand for said purposes is therefore illegal and excessive to the amount of $4.25 a thousand."

The tax levy was amended by the board of county commissioners of roads and revenues as follows: " Resolved that the tax levy heretofore levied on September 6, 1921, be amended so as to add after the item, .3 of a mill to pay the expenses of the county for bailiffs at court, non-resident witnesses in criminal cases, fuel, servant hire, stationery and the like, the words as follows: " ' One tenth of a mill of said three tenths of a mill shall be used to pay the expenses of the county for the purposes mentioned in § 400 of the Civil Code of Georgia.' "

At the conclusion of the hearing the trial judge passed the following order: " By consent of counsel for the respective parties to the above-stated case a trial thereof on the merits before the presiding judge, without the intervention of a jury, has been entered upon, at this time and place, upon the defendant's affidavit of illegality as this day amended, and the plaintiff's traverse to the same, as well as upon the following evidence and admissions of counsel: A certified copy of the amendment to the tax levy set forth in the second paragraph of plaintiffs' said traverse was introduced in their behalf, and their counsel conceded and admitted in open court that the grand jury of Early County was in session at the first or spring term, 1921, of Early superior court, but did not recommend a tax of $9.25 a thousand (or any other amount) for the payment of debts and general county purposes, nor did any previous grand jury make any such recommendation. It is accordingly considered and adjudged, after hearing argument of counsel, as follows, to wit: That item 10 of the tax levy, assessing two mills to pay expenses of eradicating cattle-tick, constitutes a portion of the tax assessed 'for general county purposes,' or current expenses, and that the tax levy for 1921 for said purposes was, to the extent of $2.00 per thousand, excessive and illegal. Otherwise, and in every other respect, said tax levy was lawful, independently of any action taken by the grand jury by way of recommendation at the first or spring term (1921) of Early superior court. Said levy on the property of the defendant in the

execution may accordingly proceed for such portion of such tax levy as is hereby held to have been lawful." The plaintiff, in error excepted to this judgment, or so much thereof as held that the tax levy was lawful in all respects except as to item 10 of the levy assessing two mills to pay the expenses of cattle-tick eradication; and it is insisted that the judgment was contrary to law, and that under the undisputed facts and the admissions of counsel the court should have held that all of the items in the tax levy upon which attack was made in the affidavit of illegality were illegal, and that the execution should not have been allowed to proceed for the collection of the taxes referred to in the items specified.

*A. H. Gray* and *Pottle & Hofmayer,* for plaintiff in error.

*Glessner & Collins,* contra.

HILL, J. (After stating the foregoing facts.) Only two questions were argued by the plaintiff in error on the call of the case in this court; the first question is whether or not county authorities in counties having a chain-gang system can purchase material for, and use the convicts in, building or repairing any public bridge, causeway, or other public works, without letting contracts therefor as provided in the Civil Code (1910), § 387. In the case of *Blalock* v. *Adams,* 154 *Ga.* 326 (114 S. E. 345), this court held that "It is not essential to the validity of a levy of a county tax for a given purpose that a contract for effecting such purpose has previously been made by the proper county authorities. . . Formerly contracts for the erection of bridges of the character of those referred to in the Civil Code (1910), § 387, had to be let to the highest bidder at public outcry after due advertisement, and debts contracted otherwise in building such bridges would not be valid claims against the county for the payment of which a tax could be levied; but since the act of August 17, 1920 (Ga. Laws 1920, p. 58), county commissioners in any county having a chain-gang can purchase material for, and use the convicts in, building or repairing any public bridge, causeway, or other public works, without letting out the contracts therefor." But the plaintiff in error contends that the act of 1920 (supra) is in violation of art. 3, sec. 7, par. 17, of the constitution of the State of Georgia (Civil Code of 1910, § 6445), which provides that "No law, or section of the code, shall be amended or repealed by mere reference to its

title, or to the number of the section of the code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made." It is also insisted that the act of 1920 is obnoxious to art. 3, sec. 7, par. 7, of the constitution of Georgia (Civil Code of 1910, § 6437), which provides that " No law or ordinance shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof." In the *Blalock* case (supra) the constitutionality of the act of 1920 was not attacked. The caption to that act is as follows: " An act to amend paragraph 389 of the Civil Code of Georgia of 1910, and for other purposes." The first section of the act of 1920 (Ga. Laws 1920, p. 58) provides: " That from and after the passage of this act paragraph 389 of the Civil Code of Georgia of 1910 be amended by adding at the end of said section the following: Provided, further, that in any county having a chain-gang the county commissioners of such county, or other persons having charge of such works, shall have the power and authority to purchase material for and use the convicts in building or repairing any public building, bridge, causeway, or other public works in said county, and in such cases the three preceding sections, paragraphs 386, 387, and 388, shall not apply. Where such material is purchased and such work done with the convicts, the county authorities of such county may use the funds of such county, arising from taxes levied for such purposes, in purchasing said material and in supporting and maintaining the convicts while such work is being done; so that said section when amended shall read as follows:" etc. It is argued that the act of 1920 in its caption purports to amend paragraph 389 of the Civil Code of 1910, and in its body it purports to amend paragraphs 386, 387, and 388 of the Civil Code of 1910, and no reference to such code sections is given in the caption referred to, nor any intention shown to modify or amend paragraphs 386, 387, and 388 of the code, and therefore this is an attempt to pass a law which refers to more than one subject-matter, or one which contains matter different from what is expressed in the title of the act.

We are of the opinion that neither of the above positions is tenable. In *Newman* v. *State,* 101 *Ga.* 534, 537 (28 S. E. 1005), it was said that " The constitution provides that 'no law . . shall pass which . . contains matter different from what is ex-

pressed in the title thereof.' Civil Code, § 5771. It is further provided in the constitution that ' no law, or section of the code, shall be amended or repealed by mere reference to its title or to the number of the section of the code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made.' Civil Code, § 5779. Some confusion arises by not keeping in mind that § 5779 has nothing to do with the contents of the title of an act; it merely provides what shall be contained in the body of the act. § 5771 prescribes the rule that nothing shall appear in the body of an act that is different from what is expressed in the title. It is well settled in this State that a title ' to amend an act entitled an act (describing by title only an existing law) is sufficient to cover any legislation which is germane as an amendment to the act the title of which is thus recited; that is to say, that when the title puts every one on notice that a certain act is to be amended, this is sufficient for every one who may be affected to be on their guard as to all matters connected with the subject-matter of the act which is recited in the title. *Adam* v. *Wright,* 84 *Ga.* 720 [11 S. E. 893]; *Bagwell* v. *Town of Lawrenceville,* 94 *Ga.* 654 [21 S. E. 903], *Ga. So. & Fla. R. R. Co.* v. *George,* 92 *Ga.* 760 [19 S. E. 813]. It would follow, therefore, that ' an act entitled an act to amend section 4570 of the code of this State,' would be a sufficient title to cover any amendment germane to that particular section; and where, as in the act under consideration, the other words added are simply words of further identification of the section to be amended, and the body of the amending act strictly conforms to § 5779, it can not be held that the act is unconstitutional because it contains matter different from what is expressed in the title thereof." This case rules the principle involved here. Nor do we think that the use of the words " paragraph 389 of the Civil Code of 1910 " instead of the word " section " would render the act unconstitutional, where the body of the act uses the words " so that said section when amended shall read as follows," etc. In addition to what has just been said, the body of the act contains a quotation of the section of the code referred to in the caption as paragraph 389.

With reference to the position taken by counsel for plaintiff in error that the act of 1920 (supra) attempts to amend §§ 386, 387,

and 388 of the Civil Code, when the caption does not refer to those sections, it is sufficient to say that the act does not in any way attempt to amend §§ 386, 387, and 388 of the Civil Code. The act merely provides that the sections above named shall not apply in cases where counties have a chain-gang; in which case the proper county officials shall have authority to purchase material for and use the convicts in building or repairing any public buildings, etc. Those sections remain identically as they were before, but with no application to a case like the one contemplated in the amending act. The declaration in the body of the act "in such cases the three preceding sections, paragraphs 386, 387, and 388, shall not apply," is mere surplusage. The effect of the act relatively to the sections named would have been the same had neither of those sections been mentioned, because if the act was in conflict with those sections they would have been repealed by the repealing clause of the act.

Other headnotes require no elaboration.

*Judgment affirmed. All the Justices concur.*