18978.   SOUTHERN RAILWAY CO. *v.* WHITFIELD
COUNTY *et al.*

DECIDED NOVEMBER 14, 1928.

*Sam P. Maddox, McDaniel & Neely,* for plaintiff in error.
*R. Carter Pittman,* contra.

LUKE, J.   On January 12, 1928, a tax-execution was levied on certain property of the Southern Railway Company, and on February 13, 1928, the Railway Company filed an affidavit of illegality to the levy.   On February 17, 1928, the board of commissioners of roads and revenues of Whitfield County amended the original tax

assessment by the following resolution: "Whereas, in the order passed September 6, 1927, levying and assessing taxes for the county of Whitfield for the year 1927, there appears as the first item of said levy the following language: 'For bridges and public works including convicts .60,' and whereas the language therein used is somewhat vague and susceptible of improper construction, now, therefore, in order to clarify the meaning of the language used in said item of said levy, and in order to make said item speak more clearly and specifically the purpose of the original levy of said item, the same is hereby amended, and, as amended, is expressed as follows: 'For bridges and such other public works as court-house and jail, including the building and repairing done upon them by convicts and hired hands, as well as the building and repairing done upon them according to contract .60.'"

On March 30, 1928, an amendment to the original affidavit of illegality was allowed. The case was submitted to the court upon an agreed statement of facts, for a decision of all questions of law and fact. The court found against the illegality and ordered the execution to proceed, and the Southern Railway Company excepted.

The following is substantially the agreed statement of facts: "The taxable property, including railroad property, franchise, etc., in Whitfield County for the year 1927, aggregated $8,717,536, and the levy of six dollars on the one thousand dollars amounts to $52,-305.22." Prior to the amendment of the levy, "all of the taxpayers, with some few exceptions, had paid their taxes for the year 1927," payments having been made prior to the date the tax fi. fa. was issued and the date it was levied. "The only levy made for the new addition to the court house in 1926 was the $6.20 on the thousand for the purpose stated in Code section 513, par. 2, and the .60 item of 1927." The remodeling of the court-house was done under contract, and was paid for out of the tax levies of 1926 and 1927, some of the contract price being paid in the last month or so, and $600 being yet to be paid. The contract price for the court-house was $29,484.78. The amounts paid out of the 1926 and 1927 levies can not be accurately determined from the books of the county. "The convicts worked on jail and court-house, building concrete floor in jail and re-enforcing vaults in court-house, which cost approximately $500." "At the date of the levy made for 1927 it was anticipated that $15,000 would be expended for one half of a bridge

to be built under contract, and to be paid for by Murray and Whitfield counties. Other contracts may be let where they can not be economically built by convicts. Contracts have not yet been let for the Murray and Whitfield county bridge." "There was expended for bridges for work done between March 12, 1927, and March 21, 1928, $16,913.59. Approximately two thousand of this amount was for material purchased for small bridges, iron, concrete, sewer-pipe, etc.; and the work of putting material in place was done by convicts, $8,978.11 and $4,870, total $13,848.11, was for two bridges built according to contract. The balance of $1,065.59 was paid to hired labor for repairs done on bridges and for material, etc." "Convicts are employed on the bridges of the county about ten per cent of their working time during the run of the year." "At the time of the levy of tax for 1927 an anticipated levy of $30,000 was for building new jail. No contract for jail has been let. Board expects to advertise and let contract some time during coming summer." "Material for bridges, except drain-tile, sewer-pipe, or clay-drains, is paid for out of the bridge fund." "Drain-tile, sewer-pipe, where work is done by convicts, is paid for out of the road fund. During twelve months approximately $6,000 is paid for sewer-pipe and drain-tile, which is paid for out of road fund. Trucks, road machinery, scrapes, etc., where used by convicts, is paid for out of general fund, and is charged to convict maintenance. The amount . . will average from $2,000 to $3,000 per annum." "No separate account is kept of amounts collected for road, bridges and work done on public buildings, but expenditures made are kept under heads for [which] tax is collected, and the charges on each separate levy is kept as nearly accurate as can be done." "Maintenance of convicts, board, clothing, guards, etc., varies according to the number of convicts, but will amount to approximately $30,000.00 per annum." "The amount of taxes levied for road purposes is $34,870.14." Prior to the issuance of the tax fi. fa., the Southern Railway Company paid all the taxes sought to be collected from it except $4,365.83, levied under item 1 of the assessment. "20 cents in levy for roads in excess of $4 on the thousand is not embraced in amount for which fi. fa. issued against the railway company. This was deducted, but levy was amended after levy of 42 cents for roads."

The first question demanding attention is presented by

ground 5 of the amendment to the affidavit of illegality. It is this: Was the amendment making item 1 of the levy read, "For bridges and such other public works as court-house and jail, including the building and repairing done upon them by convicts and hired hands, as well as the building and repairing done upon them according to contract," illegal because it amounted to a new levy against the railway company, it being admitted that "all taxpayers, with some few exceptions, had paid their taxes for the year 1927" prior to the issuing of the fi. fa. and the levy of the same, and prior to the amendment of the tax levy?

Item 1 of the original levy was as follows: "For bridges and public works, including convicts, .60." The amount of the levy was not changed by the amendment.

In the case of *Anthony* v. *Standard*, 146 *Ga.* 198 (91 S. E. 16), a levy for "contingent expenses, 36%, $7022.74" was attacked as void. This item was amended to show that it was for certain specific purposes. The court held: "Neither the amount of taxes nor the percent. to be collected was altered. The amount to be paid by each taxpayer remained the same, and the amount going to each fund was unchanged. The amendment simply explained that 'contingent expenses,' a term unknown to county taxation, was intended to mean certain things, and that the levy, which was of uncertain meaning, was intended to raise money for certain definite and legal purposes." A tax levy of "$16 per thousand on $3,476,-074, which will net $55,616," under which a tax fi. fa. was issued against the plaintiff, was amended by setting out the several purposes for which the levy was made. *McGregor* v. *Hogan,* 153 *Ga.* 473, 484 (112 S. E. 471). Where a tax levy exceeds the limit allowed by law it may be reduced by amendment to bring it within that limit. *McMillan* v. *Tucker,* 154 *Ga.* 154 (9) (113 S. E. 391). Where a tax levy specifies the amount to be collected for each separate purpose, but not the percent, it may be amended to show the percent levied for each item as required by section 514 of the Civil Code of 1910. *Sullivan* v. *Yow*, 125 *Ga.* 326 (54 S. E. 173), and *Yow* v. *Sullivan,* 129 *Ga.* 187 (58 S. E. 662). It also appears from these decisions that an excessive levy may be amended so as to bring it within the legal limit. But, "where the taxpayers in general [of a county] paid their taxes for the year, and executions had been issued against those who had defaulted in the payment of the

same, including" a railroad company, "and when, after a levy upon its property," the defendant filed an affidavit of illegality," this court held that "it was not then lawful to amend the tax levy by reducing the amount levied to pay the legal indebtedness of the county, . . and by adding the equivalent of such reduction to the amount levied for a separate and distinct purpose; and the court, upon the trial of the issue formed by the affidavit of illegality, properly disregarded such attempted amendment of the tax levy. *Seaboard Air-Line Ry. Co.* v. *McIntosh County,* 38 *Ga. App.* 43 (142 S. E., 699). See also the kindred case of *Seaboard Air-Line Ry. Co.* v. *McIntosh County,* 38 *Ga. App.* 44 (142 S. E. 698). These decisions both are based upon the authority of *Ala. Great So. R. Co.* v. *Wright,* 34 *Ga. App.* 639 (130 S. E. 918), which, in turn, rests upon *Wright* v. *So. Ry. Co.,* 137 *Ga.* 801 (74 S. E. 529); *Wright* v. *So. Ry. Co.,* 28 *Ga. App.* 545 (112 S. E. 171).

In the case at bar there was no attempt to retain in a tax levy an illegal portion thereof by the simple but illusory expedient of shifting the illegal part to a different item of the levy. The amendment merely explained and amplified the meaning of item 1 without changing either the amount of the levy or the purpose for which it was made, and is not illegal for the reason assigned.

■ The objection raised in ground 6 of the amendment to the affidavit of illegality, that the levy as amended violates the constitutional provision that all taxes shall be uniform, is without merit.

■ Ground 6 of the original affidavit of illegality is that "there is no separation of the items for bridges, for public works, and for convicts." Ground 6-1/2 of the amendment to the affidavit of illegality is that it cannot be determined from said amendment what portion of said levy of six dollars on the thousand is for each purpose set out therein. This contention is not tenable. See Civil Code (1910), §§ 513, 514; *McMillan* v. *Tucker,* supra.

■ In the original levy appears this item: "For roads, .42." Ground 7 of the original affidavit of illegality alleges that since Whitfield county was operating under the alternative road law and had levied $4.20 on each thousand dollars worth of taxable property "for road purposes," its levy for such purposes was exhausted, and the original levy for "bridges and public works, including convicts," was invalid for the reason that a part of it was for road purposes. Ground 8 of the original affidavit is practically the same

as ground 7. Ground 7 of the amendment to the affidavit of illegality is to the same effect. It avers that the phrase, "other public works," includes roads, and that having exhausted the levy for roads, the county had no authority to levy an additional sum for roads or for convicts while engaged in road building.

We have already indicated in the first division of this opinion that the county had the right to amend item 1 of the levy, reading "For bridges and public works, including convicts, .60," so as to make it read, "For bridges and such other public works as courthouse and jail, including the building and repairing done upon them by convicts and hired hands, as well as the building and repairing done upon them according to contract, .60." Clearly it would be putting a forced construction upon the above item as amended to hold that the phrase "public works" includes "roads"; and this we decline to do. "All presumptions are in favor of the legality of a tax" (*Blalock* v. *Adams,* 154 *Ga.* 326 (3) (114 S. E. 345), and this court will not adopt a strained construction of an item of a tax levy in order to make that item illegal. There is no merit in any of the three grounds here considered.

■ In the light of the amendment allowed, there is no merit in ground 9 of the original affidavit of illegality, that "any item levied under the term 'public works' is illegal . . , there being no county tax authorized under the law for 'public works.'"

■ Ground 10 of the original affidavit of illegality is that if any portion of the first item was levied for bridges costing over $300 each, it was illegal, because such bridges could only be built by contract, and there were no such contracts let. "The law does not require a contract to be made for the construction of the bridges before the commissioners would be authorized to levy a tax to provide funds to pay for the same. If it is necessary to levy a tax for the purpose of building bridges, the levy may be made before the contract is made." *Gaines* v. *Dyer,* 128 *Ga.* 585, 593 (58 S. E. 175). To the same effect is *Blalock* v. *Adams,* supra, where the court held: "It is not essential to the validity of a levy of a county tax for a given purpose that a contract for effecting such purpose has previously been made by the proper county authorities." See also *So. Ry. Co.* v. *Wright,* 31 *Ga. App.* 28 (119 S. E. 542).

■ Grounds 8 and 9 of the amendment to the affidavit of illegality do not of themselves present any question for decision.

■ Ground 10 of the amendment to the affidavit of illegality is that $52,305.22 levied under item 1 of the levy was used by Whitfield county "largely for the purpose of supporting the convicts upon the public roads, and not in the erection of or repair of buildings, or bridges of a value in excess of $300 each;" and "that all bridges costing $300 or less were and are a part of the public roads and, under the alternative road law, are payable out of the road fund; and . . that said original levy and the amendment thereto is an effort . ·. to augment the road fund, and not to levy a tax under the law."

Is it true that all bridges costing $300 each or less must be paid for out of the road fund? Not since the passage of the act of 1920 to amend section 389 of the Civil Code (Ga. L. 1920, p. 58). Under this law, "In any county having a chain-gang the county commissioners of such county, or other persons having charge of such works, shall have the power and authority to purchase material for and use the convicts in building or repairing any public building, bridge, causeway, or other public works in such county, and in such cases the three preceding sections, paragraphs 386, 387, and 388, shall not apply. Where such material is purchased and such work done with the convicts, the county authorities of such county may use the funds of said county arising from taxes levied for such purposes in purchasing said material and in supporting and maintaining the convicts while said work is being done." In the case of *Central of Ga. Ry. Co.* v. *Wright,* 33 *Ga. App.* 100 (125 S. E. 520), reference was made to the act of 1920 in this language: "Its purpose was to permit counties having a chain-gang, in their discretion, to purchase material for and use the convicts in building or repairing any public building, bridge, causeway, or other public works, whatever the cost might be, where theretofore, except as to work costing less than $300, it had been mandatory, under the law, that such work be let out by contract. The act merely allowed a different method of having an improvement made for which counties were already empowered to levy a tax. See *Blalock* v. *Adams,* 154 *Ga.* 326 (4) (114 S. E. 345). Apparently the act has no reference whatever to the improvement of public roads as distinguished from bridges and other public works."

It does not appear from the agreed statement of facts that taxes levied under item 1 of the levy were used "largely for the purpose

of supporting the convicts upon the public roads and not in the erection of, or repair of, buildings or bridges." Nor can we say from the statement of facts that the levy is an effort to augment the road fund, and not to levy a tax under the law.

The judgment finding against the affidavit of illegality and ordering the execution to proceed is correct.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*