JESSE TUCKER and others, plaintiffs in error, vs. THE JUSTICES OF THE INFERIOR COURT of Lee county, and JOHN GREEN, Tax Collector, defendants in error.

[1.] General summary of the statutes, prior to the Code, conferring upon the Inferior Court the power of taxation for local purposes.

[2.] A tax levied by the Inferior Court, for a turnpike fund, and subsequently ratified by the Legislature, is valid.

[3.] The power of taxation to pay for public bridges, by the Act of 1799, appears to have . no limit except the cost of erecting the bridges.

[4.] An abuse by the Inferior Court, of the taxing power, will not be presumed.

[5.] Prior to the Code, the tax for the support of paupers might extend to one eighth of the general tax.

[6.] By virtue of the power of the Inferior Court to levy an extraordinary tax for general purposes, upon the recommendation of two-thirds of the grand jury, a tax, if so recommended, might be imposed to pay petit jurors, and for paling in the court house, if the limit of fifty per cent. upon the State tax, for these and all other general purposes, were not exceeded.

In Equity. In Lee Superior Court. Motion to dissolve Injunction. Decided by Judge ALLEN. At Chambers. June 1861.

Tucker and several other citizens of Lee county, filed their bill against the defendants in error, in November, 1860, exhibiting an order passed by the Inferior Court on the 4th of September, 1860, imposing taxes for that year, as follows— the per centage being counted on the State tax—to wit: bridge fund, 45 per cent; pauper fund, 7 per cent; petit jury fund, 10 per cent; turnpike fund, 30 per cent: and directing the tax collector to collect the same.

The bill alleged that these taxes for bridge and Turnpike funds were illegal, and that the collector was proceeding against the complainants to collect, not only all the taxes specified in the order, but thirty-five per cent. in addition thereto, for which latter he had no authority or warrant of any kind whatever. It averred that all the tax over and above fifty per cent. on the State tax, which the collector was attempting to collect, was illegal and void.

It alleged that a court house and jail for the county had been built and fully paid for, after which the court house

burned down, and the Inferior Court contracted with one Cameron for its re-building, complete, at $3,900, and Cameron had complied with his contract; that, to raise a specific fund to pay for this re-building, the said Inferior Court collected, by taxation, in the years 1858 and 1859, in addition to the tax for other purposes, $5,500; and that the difference between this sum and the amount paid Cameron ought still to be in the county treasury, and if not there, had been paid out for illegal purposes.

It called for a full statement showing the disposition made of this specific fund, as well as that raised for county purposes in the years 1858 and 1859.

It offered payment of the State tax with fifty per cent. on the same, and all other sums found legal and valid; and it prayed for an injunction against the collection of the alleged illegal taxes.

The injunction was granted.

The justices of the Inferior Court answered the bill, admitting that the collector was proceeding, as charged, to collect, but denying that any of the said taxes were illegal. They exhibited an extract from the presentments of the grand jury which served at March Term 1860, recommending the Inferior Court to levy, for that year, the following rates on the State tax: for bridge fund, 20 per cent; pauper fund, 10 per cent; general purpose fund, 25 per cent; petit jury fund, 20 per cent; turnpike near Bate's, 40 per cent; and paling in court house, 10 per cent. They declared that their order of the 4th of September, though appearing on the minutes the same as in complainant's bill, did, as passed and furnished to the tax collector, levy a tax of twenty per cent. for general purpose fund, in addition to the other taxes specified therein, and that this part of it was omitted by the clerk, through mistake, in recording the order on the minutes. They exhibited another order, passed by them on the 4th of December, 1860, as follows: "It appearing that the Court did, on the 4th of September last, pass an order levying the county tax of Lee county for the year 1860, and that in

drafting said order, the amount intended to be levied for general purpose fund, to wit, the amount of twenty per cent. was not inserted in said order. It is, therefore, ordered that said order be amended by inserting therein "for general purpose fund, twenty per cent."

As to the remaining fifteen per cent., they'admitted that it was not levied by the order of the 4th of September, 'but they exhibited an order which they passed on the 24th of that month, as follows: "The Ordinary having levied fifteen per cent. on the State tax for poor school purposes, for the year 1860, it is, therefore, ordered that the same be levied, and that the tax collector of said county collect the same."

To support the tax to raise the turnpike fund, they exhibited an Act of the General Assembly, approved December 20th, 1860, entitled, "An Act to legalize the levy of an extra tax by the Inferior Court of Lee county, for the purpose of a turnpike across Muckalee creek."

They offered, in their answer, to remit any illegal tax.

They denied that the court house and jail were paid for in full prior to 1858, but alleged that a balance of $873 25 remained due, and that the same was paid out of the fund raised in 1858 from tax for court house and jail. They alleged that the net aggregate of said fund for the two years, 1858 and 1859, deducting $176 63 not yet accounted for by the officer who collected it, was $5,487 37, none of which had been misapplied, but all (except a balance of $94 22 still in the treasury) expended for the objects for which the fund was raised. They annexed to their answer a statement showing the amount of this fund, and to whom paid out, according to the books of the county treasurer.

They admitted that Cameron re-built the court house at the price stated in the bill.

Such was the substance of the answer; and after filing the same, the defendants moved for a dissolution of the injunction on the grounds, (1.) that there was no equity in the bill; (2.) that the bill did not make a case for injunction; and (3.) that the equity was fully sworn off by the answer.

The presiding Judge granted the motion; and that is the error alleged.

G. J. WRIGHT, for plaintiff in error.

WEST, SLAUGHTER & ELY, for defendant.
HARRIS, J.

[1.] We have, with much care, endeavored to trace the various delegations, by the Legislature, to the Inferior Court, of the power of taxation for local purposes.

The first grant we find in the Act of 1799, (see *Cobb's Digest*, sec. 5, p. 944) in the words, "And that, from time to time hereafter, the Inferior Courts of the several counties shall have full power and authority to appoint the places of erecting public bridges; and the Inferior Court shall levy the amount [cost] thereof on the county, or order the same to be paid out of any funds of the county subject to their disposal."

The second grant, by Act of 1801, (*Cobb's Digest*, p. 358) required the Inferior Court to levy, annually, a county tax equal to what is due or may become due to the jailor, sheriff, and coroners, for costs and fees in cases of insolvent prisoners, maintenance of criminals while in jail, etc.

The third grant is by act of 1820, (*Cobb's Digest* sec. 7, p. 184) whereby power is conferred on the Inferior Court to levy a tax, extraordinary of the general State tax, not to exceed 50 per cent., annually, on such general State tax, upon the recommendation of two-thirds of the grand jury.

The fourth grant is by the Act of 1818, (*Cobb's Digest*, p. 347) whereby the Inferior Court is authorized to raise a special tax, not to exceed one-eighth part of the general tax of the county, for the support of its paupers.

The fifth grant is by the Act of 1843, (*Cobb's Digest*, p. 5) for educational purposes, upon the recommendation of the grand jury at the spring term.

These powers resided in the Inferior Courts at the time

the levies complained of were made; and the question is, were they authorized by law?

[2.] As to the levy of thirty per cent. tax as a turnpike fund, if that had been a disputable exercise of power when made, it was afterwards legalized by an Act of the Legislature. That Act disposes of this item.

[3.] A tax of forty-five per cent. was levied for a bridge fund. The power of taxation to pay for public bridges, by the Act of 1799, appears to have no other limit than the cost of erection; and full authority is given to raise their cost by taxation.

[4.] There is no allegation in the bill of complainants which denies an indebtedness for that purpose—that the tax levied exceeds the cost of bridges built or contracted for. Without an allegation of that kind, and undenied, we will not presume an abuse of power in this regard.

[5.] The pauper tax, limited to one-eighth of the general tax, has not exceeded the law.

[6.] We have not been able to find either a general or local law, previous to 1860, conferring the power on the Inferior Court to levy a tax to pay petit jurors. Yet, if the duty of compensating them is imposed on the county treasury, the moneys arising from verdicts and confessions in civil cases, it is apprehended, will be applied to such purpose, and exhausted, before a tax for this purpose will be imposed. We are not sure but that the duty to pay petit jurors involves, necessarily, the right to tax to pay the indebtedness on this account which may remain. But this question will be satisfactorily disposed of in the examination of the next item of tax complained of, that is, the thirty-five per cent. additional to those enumerated. This amount embraces the two items recommended by the grand jury—twenty-five per cent. for general purposes, ten per cent. for paling in court house. They also recommended a tax of twenty per cent. to pay petit jurors.

Now, it cannot be doubted that, upon the recommendation of two-thirds of the grand jury, an extraordinary tax for

general purposes may be levied by the Court. The grand jury recommend fifty-five per cent.; but the Inferior Court, in their levies for general purposes, did not exceed fifty per cent.; and their order, therefore, is not liable to the objection made by complainants.

The bill of complainants was evidently filed under the conviction that the Inferior Court could levy no taxes for county purposes beyond fifty per cent. on the general tax; and such, indeed, was my impression until compelled by duty to make this investigation.

This decision is made upon the laws as they were when the bill was filed. Since then, by the Code, the duties of the Inferior Court have been more clearly defined, and their discretionary powers in levying taxes enlarged. *See Code*, *pages* 102, 103, 104, 105, 106, 107.

Finding no violation of law in the levy of taxes by the Inferior Court of Lee, we affirm the judgment of the Circuit Judge, dissolving the injunction in this cause.