WRIGHT, comptroller-general, *v.* SOUTHERN RAILWAY CO.

The ordinary of Stephens county made a general assessment for the year 1909 against the taxpayers of the county, specifying so much per $100 for the various purposes named. There was no recommendation of the grand jury with respect to the taxes for "county purposes," referred to in Civil Code (1910), § 508, and for these purposes the levy assessed an amount in excess of 50 per cent. of the State tax for that year. Under this levy the defendant in error paid all taxes assessed against it for other than general "county purposes," and paid all of the amount for that purpose which was legally levied against it, refusing to pay the balance. Thereafter, in the following year, and after all taxes (other than those represented by uncollected fi. fas. issued under the original levy) had been collected from all other taxpayers, the ordinary made what he called an amendment of the levy, by shifting from the items making up the general "county purposes" sufficient amounts or percentages to reduce the amount specified for such purposes to the legal limit, adding the amounts so taken to the other purposes named, but leaving the entire amount of tax to be paid the same. *Held,* this proceeding was not a legitimate amendment of the original levy, but amounted to an attempted new levy against a single taxpayer; and a fi. fa. based thereon, for the amount of the illegal taxes which the defendant in error had refused to pay, was unenforceable.

MARCH 13, 1912.

Illegality of execution. Before Judge Pendleton. Fulton superior court. March 20, 1911.

*John W. Owen* and *Claude Bond,* for plaintiff in error.

*McDaniel & Black* and *E. A. Neely,* contra.

HILL, J. The ordinary of Stephens county levied a tax on all the taxable property of the county for the year 1909, in which the various purposes for which the tax was levied were enumerated and the amount per $100 for each purpose was set forth. Under this levy, something over $8,000 was claimed against the Southern Railway Company, of which amount, on or about December 20, 1909, it paid all except $3,102.40, the payment of which it resisted as being illegally levied, it representing an amount levied for "general county purposes," in excess of the amount which the county, in the absence of a grand-jury recommendation, could legally levy for that purpose, the legal amount which it could so levy being 50 per cent. of the State taxes for the year in which the levy was made. The amount proportioned to "general county purposes" under this levy amounted to $7.50 on the $1,000, while the State tax was $2.50 per $1,000, and the difference of $5 per $1,000 so

levied was claimed by the Southern Railway Company to be illegal and void. This excess of $5 per $1,000 aggregated the amount of tax the payment of which the railway company refused. On February 2, 1910, the ordinary made a so-called amendment to the original levy, wherein he recited the fact of the previous levy, and that, "In the direction, use, and division of said levy and assessment and the taxes raised and collected thereunder, it is necessary to amend said levy, so as to make each item included in said assessment specific as to the rate per cent. and the divisions of the items, as to its purpose, and for the needful and legal uses of the same by the county, as required by law." The alleged amendment then proceeded to redistribute the percentages or amounts (stating them with respect to the basis of $1 instead of $100 as in the original levy) for the various purposes mentioned, but left the total amount of taxes sought to be collected so as to foot up the same as in the original levy. He so shifted the various percentages as to reduce the amount to be collected for objects which are known as "general county purposes" to the legal limit of 50 per cent. of the State tax, but, as compared with the original levy, increased the percentages specified for other named purposes, left some as formerly, and added one purpose not mentioned in the original levy, specifying a per cent. to be collected therefor. Under the so-called amendment, a fi. fa. in the name of W. A. Wright, comptroller-general, was issued against the Southern Railway Company and levied upon certain of its property. The company filed an affidavit of illegality, in which it contended, among other defenses, that there was no necessity for any amendment to the original levy, and that it amounted to an attempt by that method to enforce against the company the collection of the amount of taxes illegally levied against it under the original levy, and that the new levy upon which the fi. fa. was endeavoring to proceed was void. The court below sustained the illegality, and the plaintiff in error excepted.

The case was tried on an agreed statement of facts, in which it was admitted, that all taxes collected from taxpayers of Stephens county up to the date of the agreement had been collected under the original levy; that all fi. fas. against property owners, issued for unpaid taxes (except those against the Southern Railway Company), were issued under the original levy; and that no attempt had been made to collect taxes from any one under the new levy,

except the Southern Railway Company. The law provides that 50 per cent. of the State taxes can be levied for county purposes for which the counties are not specially empowered to levy a tax (commonly known as "general county purposes"), without recommendation of the grand jury, but no more. Civil Code (1910), § 508. It also provides that the percentage to be levied for each purpose shall be stated. § 514. Also it provides that the amount levied shall only. be used for the purpose for which it is collected. § 516. There are certain extraordinary purposes which do not fall within the 50 per cent. limit, such as erecting public buildings, and the. like; and a tax for the support of paupers, which is limited to 25 per cent. of the State tax.

In this case, the ordinary made a levy and specified the purposes for which it was made and collected. It was collected for these purposes from every taxpayer making payment, except the railroad company. The railroad company, perceiving the levy was illegal, offered what could be legally levied for "general county purposes," and then paid all of the taxes levied for extraordinary purposes which fell outside of "general county purposes," refusing to pay that part of the taxes levied for the last-named purposes which it was illegal to levy. After having collected from every other paying taxpayer all of the taxes for certain purposes named in the original levy, and after having collected from the railroad company all that he could legally collect under that levy, the ordinary proceeded to do what he calls "amending his levy." There was no need of any amendment to make it specific, or to make it clear; because, while it did not say so much per cent., it stated what was charged on the $100. There was no real need of any amendment to the levy for purposes of specification; or, if there was any need at all, it was simply to prescribe the percentage which he had levied for each purpose, and that was the only additional specification which was necessary, if any was. But instead of doing this, after collecting all he legally could from the railroad under the levy made, he proceeded to make an entirely new levy, so as to distribute, under respective heads, where it might have been originally lawfully levied, the illegal amount which he had sought to enforce against the railroad company under the original purposes; and it was not really an amendment of the levy, but was an entirely new levy against one taxpayer alone. It is no answer to say that

the total amount of tax to be paid was not changed. Any other taxpayer, at the proper time, could have resisted and defeated it just as well as the railroad company, instead of making voluntary payment of the illegal tax and thereby waiving his right to attack it. But the possibility that the county collected illegal taxes from other taxpayers gave the ordinary no authority at all to equalize by collecting a proportionate amount under the guise of legal taxation from a taxpayer who did resist. That all the other taxpayers yielded to the illegal levy and paid it without protest furnishes no reason why the ordinary could shift the illegal assessment around, so as to make one taxpayer pay the same amount which had been unlawfully collected from the other taxpayers. When one taxpayer finds that he has been illegally assessed, for the levying authorities to simply shift the items around so as to make him pay the same amount, by introducing new items and changing the amounts of assessment for specific purposes, is not a legitimate amendment of the tax assessment, but is a new assessment against a single taxpayer; and this is shown to be true by the fact, as far as can be gathered from the showing of disbursements of county funds set out in the agreed statement of facts, the county did not expend the amounts collected for the purposes named in the so-called amended levy in accordance with assessments made therein, but in its expenditures more nearly followed the amounts which were derived, according to the first assessment, as belonging to the respective funds from the per cent. levied for each purpose. And the effort is now made to collect this additional amount from the one resisting taxpayer, not according to what the county really needs for the purposes specified in the new levy, or with reference to what has been expended for such purposes, but merely to cover in the illegal amount which the county seeks to recover against one taxpayer. Counsel for the plaintiff in error rely on the case of *Yow* v. *Sullivan,* 129 *Ga.* 187 (58 S. E. 662), as authority for their contention that the last levy is merely an amendment of the original levy, and is permissible. That case differs widely from the present, in that the amendment merely specified the percentages levied for each purpose in the original levy, which the county authorities had failed to specify in the first instance. This court had held (*Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173)), that on this account the levy as it first stood was

unenforceable. In the present case, it was clear what amount each taxpayer was required, under the original levy, to pay for a particular purpose, but there was an illegal assessment for items comprising "general county purposes." The original levy had been acted on and enforced, or apparently acquiesced in, as to all the taxpayers of the county other than the defendant in error, and the county in its expenditures had treated the funds as collected for the respective purposes according to the percentages named in the first levy—at least this is a fair inference from the admitted facts, which can not be clearly analyzed, on account of the failure to keep accurate and separate accounts of disbursements in all instances; and to presume otherwise would be to put the county authorities in the attitude of violating the legal requirement that county funds shall be expended for the purposes for which they are levied and collected, it appearing that under the percentages shown on the second assessment the amount apportioned to certain purposes would greatly exceed what has been expended therefor, and should leave in the county treasury a sum largely in excess of the balance actually on hand as shown by the agreed facts. Under the facts of this case, we are clear that there was no legitimate amendment of the original tax levy, and that it was correctly adjudged by the trial court that the fi. fa. against the defendant in error was illegal.

*Judgment affirmed. All the Justices concur.*