17448, 17454. CENTRAL OF GEORGIA RAILWAY COMPANY *v.* WRIGHT, comptroller-general, and *vice-versa.*

"Under the Civil Code (1910), § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses of the county." *Central of Ga. Ry. Co.* v. *Wright,* 156 *Ga.* 13 (118 S. E. 709). The court did not err in this case in "overruling" the affidavit of illegality and ordering that the fi. fa. proceed.

DECIDED FEBRUARY 14, 1927.

Affidavit of illegality of execution; from Putnam superior court —Judge Park. May 15, 1926.

Application for certiorari was granted by the Supreme Court.

*A. R. Lawton Jr., M. F. Adams,* for plaintiff in error.

*S. T. Wingfield,* contra.

BELL, J. On September 17, 1925, the commissioners of roads and revenues of Putnam county made the following tax levy:

1. To pay legal indebtedness of county......... 1    mill.
2. To build and repair court-house, jail, bridges, ferries, and poor-house .................... 3 3/4 mills.
3. To pay sheriffs and jailers................. 1/2 mill.
4. To pay coroners' fees ..................... .1    mill.
5. To pay expenses of county court, fuel, servant hire and stationery ...................... 2/5 mill.
6. To pay jurors a per diem compensation...... 1/2 mill.
7. To pay expenses for support of poor......... 1    mill.
8. To pay salaries of judges, commissioners, and solicitor, and tax-collector ................ 2 1/4 mills.
9. For constructing public roads ............. 4    mills.

Total    13 1/2 mills.

The Central of Georgia Railway Company paid the taxes required of it with the exception of $1.25 per thousand, amounting

Counties, 15 C. J. p. 634, n. 56; p. 636, n. 87.

to $531.08. A fi. fa. having been issued and levied upon its property for this balance, it interposed an affidavit of illegality, attacking items 3, 4, 5, 6, and 8, aggregating $3.75 per thousand, upon the ground that this amount exceeded 50 per cent of the State tax (5 mills, or $5 per thousand) by $1.25 per thousand, and that the levy for these items was to that extent illegal and void. The case was tried upon a stipulation of facts as follows: At the time of the levy of the tax in September, 1925, there was an outstanding bonded indebtedness against the county, amounting to $18,855 and of this sum $1,855 was due for the fiscal year 1925. The grand jury, at the March term 1925, recommended a levy of 2-½ mills for county purposes. The alternative road law is in force in Putnam county.

The comptroller-general, by his attorney, offered in evidence two amendments made by the board of commissioners to their tax levy, by which there was inserted in the levy the following recital: "It appearing to this board, after they have met this day to assess and levy taxes for Putnam county for the fiscal year 1925, that 100 per cent. of the State tax of 5 mills will be needed to pay the debt that has accumulated against said county and is due for said year, to wit, a bonded debt of $1,855, and the current expenses thereof for the fiscal year 1925, as is provided for in Civil Code (1910), § 507, therefore it is ordered that said 100 per cent. or 5 mills, or so much thereof as may be necessary, is hereby levied and assessed for these purposes, and the following taxes shall be and are hereby levied for said accumulated debt and said current expenses under and according to the provision of said section 507 of the Civil Code of 1910, the remaining taxes in said order and assessment being set forth in items 2, 7, and 9 thereof." The court rejected these amendments from the evidence, but "overruled" the affidavit of illegality, and both parties excepted, the railway company by the main bill of exceptions and the comptroller-general by the cross-bill.

The contention of counsel for the railway company is that the county authorities have no authority to levy a tax for current expenses or county purposes except as granted in the Civil Code (1910), §§ 508 and 510. It is denied that any authority to levy a tax for current expenses is conferred by section 507, the contention being that the tax for that purpose can be levied only

under one of the other sections referred to, and must, accordingly, be limited to 50 per cent of the State tax. The question for decision on the main bill of exceptions, as stated by counsel for the plaintiff in error therein, is, "Can a county, which has made a levy to pay debts, levy more than 50 per cent. of the State tax for current expenses, provided it does not levy more than 100 per cent. of the State tax for the combined purposes of paying its current expenses and discharging its debts?" Under the decision in *Central of Ga. Ry. Co.* v. *Wright,* 156 *Ga.* 13 (supra), (which may hereinafter be called the *Central Railway* case in 156 *Ga.*) this question should be answered in the affirmative. In that case, the Supreme Court, in answering a question propounded by the Court of Appeals, ruled that under the Civil Code (1910), § 507, the county authorities may levy a tax of 100 per cent. of the State tax to pay current expenses of the county, but that a levy to pay both current expenses and accumulated debts, or a levy for either of these items, must not exceed 100 per cent. of the State tax. However, it would seem that under the ruling in the later case of *Seaboard Air-Line Ry. Co.* v. *Wright,* 161 *Ga.* 136 (129 S. E. 646), (which may hereafter be called the *Seaboard* case in 161 *Ga.*), the answer to the question now before us should be in the negative. In the case last cited, the Supreme Court said, "The levy of a tax for the purposes specified in section 508 cannot exceed 50 per cent. of the State tax. This limit extends to current expenses." We are unable to reconcile the two decisions just referred to. They are opposed to each other by counsel in the briefs, and we think it necessary to determine which of them we shall follow in the present case.

The able counsel for the plaintiff in error, in maintaining that the case last cited expresses the true law, have furnished a most interesting brief, in which they undertake to trace the origin of the sections of the code relating to the authority of counties, by their proper officers, to levy taxes for current expenses and county purposes; and in which they have sought to show that counties had no authority to tax for general county purposes until the passage of an act from which we get the present section 508, by which the inferior court was granted power to levy a tax "extraordinary of the general State tax," not to exceed 50 per cent. annually on such general State tax, upon the recommendation of two-thirds of the

grand jury. Compare summary of tax laws in *Tucker* v. *Inferior Court,* 34 *Ga.* 370. Counsel contends that this limit of 50 per cent. has never been increased, notwithstanding the provisions of section 507, which section, it is pointed out, succeeded section 508 in its position in the several codes until the Code of 1895, when it was transferred and placed in its present order. See *Sheffield* v. *Chancy,* 138 *Ga.* 667 (75 S. E. 1112). It is insisted that merely to take a section of the code from one relative position and place it in another could not have the effect of changing the law, and that 50 per cent. of the State tax continues to be the maximum that may be levied for county purposes, with the exception of certain levies not to be counted in making this amount. *Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173). In the decision in the *Sheffield* case, in which all the Justices concurred, it appears that the Supreme Court took a different view (though some of the language in that case may be obiter) from that entertained by counsel as to the effect of the transposition of the provisions of the present section 507. Then in *Wright* v. *So. Ry. Co.,* 146 *Ga.* 581 (91 S. E. 681), the Supreme Court ruled as follows: "County authorities may legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses of the county, without any reference to a recommendation by the grand jury. If 100 per cent. of the State tax be not sufficient to pay accumulated debts and current expenses of the county; the authorities have power to raise a tax for county purposes over and above the tax of 100 per cent. of the State tax, not to exceed 50 per cent. of the State tax for the year it is levied, 'provided two-thirds of the grand jury recommend such tax'." Only five of the Justices presided in that case. But the same rulings, all the Justices concurring in each instance, were made in *So. Ry. Co.* v. *Wright,* 154 *Ga.* 334 (114 S. E. 359), and in *Southwestern R. Co.* v. *Wright,* 156 *Ga.* 1 (118 S. E. 552). In the first of these two cases the court was requested to review and overrule the decision in 146 *Ga.,* but declined to do so and adhered to the ruling in that case. See also *Blalock* v. *Adams,* 154 *Ga.* 326 (114 S. E. 345). Finally, in the *Central of Georgia Railway Co.* case in 156 *Ga.,* in determining the meaning of section 507 as relating to the power to levy taxes for the payment of *current expenses,* the Supreme Court, after citing cases to show that this section conferred author-

ity to levy 100 per cent. of the State tax to pay accumulated debts, said, "It follows necessarily from the above decisions that if the proper county authorities can levy a tax of 100 per cent. of the State tax to pay accumulated debts, under the above quoted section, they can levy 100 per cent. of the State tax to pay current expenses." This decision was by a full bench, and we have been unable to find any older case in point to the contrary of what was held therein. We think it contains the first direct ruling on the question whether counties may, under section 507, levy a tax of 100 per cent. of the State tax to pay current expenses only. The decision in the *Seaboard* case in 161 *Ga.* was not only later in point of time, but was by a divided court, Mr. Justice Beck dissenting. The decision in the *Central of Georgia Railway Co.* case in 156 *Ga.* was in response to a direct and clear-cut question certified by this court, in a case involving facts substantially identical with those of the case at bar, and undoubtedly calling for the application of the same rules of law.

Under the above analysis of the decisions, we think it plain that this court could not decide the present case in favor of the plaintiff in error. In our humble opinion such a disposition of it would require the overruling of a decision or decisions of the Supreme Court, which, of course, we have neither the authority nor the inclination to do.

The decision in the *Seaboard* case in the 161 *Ga.* reversed a judgment of this court which was under direct review on certiorari, and it is with the greatest hesitation that we do not now follow the Supreme Court's decision in that case. Our sole reason for not doing so is that, upon considerations already stated, we feel bound by the decision in the *Central of Georgia Railway Co.* case in the 156 *Ga.* We do not quite follow the reasoning in that case to the effect that the tax authorized by section 507 "is an extra or special tax," additional to that which may be levied under section 508; but that part of the decision has no bearing on the present case.

We have very great doubt as to what is the true law applicable to cases of this character, and would have been pleased to comply with the request of counsel to defer decision in this case until the Supreme Court decides a similar case, pending in that court, between the same parties, on writ of error from Spalding county; but our information is that that case came up several months later

than the instant case, which must· be decided during the present term, while a decision is not required in the Spalding county case until during the next term. For this reason we have not undertaken to withhold decision in this case as requested.

We could certify a question; but since the plaintiff in ·error has open to it the remedy of certiorari, and since, as seen, we have heretofore requested and received instructions from the Supreme Court upon the identical point under consideration, we deem it proper not to repeat the question in this case.

Since our affirmance of the judgment on the main bill will result in a final disposition of the case in the court below, it is unnecessary to deal with the assignments in the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Jenkins, P. J., and Stephens, J., concur.*