# CENTRAL OF GEORGIA RAILWAY COMPANY *v.* WRIGHT, comptroller-general.

No. 5921.    FEBRUARY 17, 1928.

Certiorari; from Court of Appeals.  36 *Ga. App.* 386.

*A. R. Lawton Jr.* and *M. F. Adams,* for plaintiff in error.

*S. T. Wingfield,* contra.

HINES, J.  The Court of Appeals held that under the Civil Code (1910), § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses. *Central of Ga. Ry. Co.* v. *Wright,* 36 *Ga. App.* 386 (137 S. E. 95).  The present certiorari has been sued out to review this decision of that court.  The railway company contends that a county may in no event levy a tax in excess of 50 per cent. of the State tax (2.5 mills) for current expenses, and that this is true even though no levy is made for the payment of debts.

1.  This brings us to construe sections 507 and 508.  By section 508, "The ordinaries have power to raise a tax for county purposes, over and above the tax they are hereinbefore empowered to levy, and not to exceed fifty per cent. upon the amount of the State

tax for the year it is levied." It will be noted that the tax here provided for is "for county purposes." The purposes for which county taxes can be levied are fixed by the constitution of this State, as amended. Civil Code (1910), § 6562; Acts 1910, p. 42; Acts Ex. Sess. 1926, p. 30. These purposes are partially stated in the Civil Code (1910), § 513. It is to be borne in mind that the power to assess taxes for county purposes is broader than the power to assess county taxes for current expenses. The language, "for county purposes," in § 508, is not the equivalent of the expression, "current expenses of the county," found in § 507. Current expenses "include ordinary expenses." "County purposes" include all purposes for which county taxes can be assessed, both ordinary and extraordinary. *Seaboard Air-Line Ry. Co.* v. *Wright,* 157 *Ga.* 722 (122 S. E. 35).

The tax which can be levied by the ordinaries under section 508, is by its very terms one "over and above the tax they are hereinbefore empowered to levy." The language, "the tax they are hereinbefore empowered to levy," in this section, clearly refers to a tax which they are empowered to levy under some preceding provision in the Code. This language refers to some law going before, to some power previously given, and to some tax which could be levied under authority previously conferred in the Code upon these officers. Section 508 is under Sec. 2. Art. 1, Chap. 7, which deals with county revenue and sources of taxation. Turning to sections 504, 506, and 507, of sec. 1 of this article, which deals with "Special and Extra Tax," we find that the ordinaries under the first of these sections are authorized to levy an extra tax sufficient to carry into effect the purposes of sections 399 and 400, without the recommendation of a grand jury, whenever the necessities arise; that under section 506 these officers are authorized to levy a tax for the support of the paupers of their counties, not to exceed twenty-five per cent. of the State tax; and that under section 507 these officers, whenever the tax levied under section 508 is insufficient, can levy a special tax, which may equal the State tax, to pay accumulated debts and current expenses. These three sections precede section 508. Each of them authorizes the levy of a tax for a county purpose, and each occupies a place in the Code before section 508. So, construing sections 504, 506, 507, and 508 together, as they appear in the present Code and as they

have appeared since the adoption of the Code of 1895, the tax which these officers are authorized to levy under section 508 is one "over and above the tax" which they are authorized and empowered to levy under the first three sections. This seems to be the natural and reasonable construction of these four sections. When the tax authorized by section 508 is defined and described as one over and above another tax which these officers are authorized to levy under the previous and foregoing provisions of the Code, and when we find that the only preceding provisions which authorize a county tax are to be found in sections 504, 506, and 507, this construction seems demanded.

2. It is true that section 507 does not expressly authorize the levy of a tax of 100 per cent. of the State tax for the payment of accumulated debts and current expenses. It clearly contemplates the payment of that percentage of the State tax for these purposes. In effect, this section makes it the duty of the proper county authorities to use an amount equal to 100 per cent. of the State tax in paying off accumulated debts and current expenses, and this amount, as we have seen, is to be over and above the amount of the fifty per cent. of the State tax which can be levied and collected under section 508. In *Tucker* v. *Justices of the Inferior Court,* 34 *Ga.* 370, 374, this court, speaking through Judge Harris, said: "We have not been able to find either a general or local law, previous to 1860, conferring the power on the inferior court to levy a tax to pay petit jurors. Yet, if the duty of compensating them is imposed on the county treasury, the moneys arising from verdicts and confessions in civil cases, it is apprehended, will be applied to such purpose, and exhausted, before a tax for this purpose will be imposed. We are not sure but that the duty to pay petit jurors involves, necessarily, the right to tax to pay the indebtedness on this account which may remain." In *Arnett* v. *Griffin,* 60 *Ga.* 349, 352, this court, speaking through Judge Jackson, said: "That act authorizes the bonds to be issued by the commissioners, and requires them in the 2d section thereof to provide for the prompt payment of the bonds—principal and interest. How provide? We know of no way except by taxation. The act of 1872, then, empowers the *commissioners* to tax without reference to the grand jury; and we hold that this tax is authorized by this local law and stands independent of the general law, and the

adjudications of this court thereon, and needs no co-operation of the grand jury to legalize it." So express conference of a power to levy a tax is not the only way in which such authority may be vested in the proper county authorities. The power to tax must be expressly conferred, or it must be bestowed upon the county authorities by clear and necessary implication. So the power to levy a tax may be given either expressly or by necessary implication. Under section 507 the county authorities are required to expend public funds in an amount equal to 100 per cent. of the State tax, in the payment of accumulated debts and current expenses: and when 100 per cent. of said tax will not pay both the debts and current expenses, they are required to pay at least twenty-five per cent. of these debts annually. How are these funds to be provided? Clearly they must be provided by the levy of a tax, as there are no other sources of revenue with which to make such payment. Besides, the implied power to levy a tax under section 507 is referred to in section 508, in the language, "over and above the tax they are hereinbefore empowered to levy." Thus it is expressly stated in section 508 that the proper county authorities have the power under section 507 to levy a tax thereunder.

But it is insisted that a tax can be levied under section 507 only for the purpose of paying debts, and not for the purpose of paying current expenses. Counsel for the railway company assert that to construe this section as authorizing the levy of a tax to pay debts involves a considerable stretch of the imagination, but that it can not by any stretch of the imagination be construed to embrace power to levy a tax to pay current expenses. In our opinion it requires no greater stretch of the imagination to construe this section as authorizing the levy of a tax to pay current expenses than it does to construe it as conferring the power to levy a tax to pay accumulated debts. This section refers to the payment of both accumulated debts and current expenses: and the codifiers, in putting it into the Code of 1863, evidently contemplated the levy of a tax for both purposes. It is just as important, if not more so, to pay the current expenses of county government as it is to pay debts which the counties have permitted to accumulate.

3. But it is insisted that the decisions of this court, upon the question of the amount of tax which can be levied by counties to meet current expenses, are in conflict; that its earlier decisions

and one of its latest hold that a tax by a county to meet current expenses can not exceed fifty per cent. of the State tax, and that others hold that one hundred per cent. or more of the State tax may be levied to meet current expenses. We are urged to remove this confusion and conflict. The authorities relied upon by coun-sel for the proposition that a tax to pay current expenses can in no case exceed fifty per cent. of the State tax, are *Barlow* v. *Ordinary,* 47 *Ga.* 639; *Waller* v. *Perkins,* 52 *Ga.* 233; *Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173); *Wright* v. *Southern Ry. Co.,* 137 *Ga.* 801 (74 S. E. 529); *McGregor* v. *Hogan,* 153 *Ga.* 473 (112 S. E. 471); *McMillan* v. *Tucker,* 154 *Ga.* 154 (113 S. E. 391); *Blalock* v. *Adams,* 154 *Ga.* 326 (114 S. E. 345); *Carter* v. *Shingler Realty Co.,* 157 *Ga.* 118 (120 S. E. 784); *Seaboard Air-Line Ry. Co.* v. *Wright,* 161 *Ga.* 136 (129 S. E. 646). The cases which counsel allege are in conflict with the foregoing are *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (91 S. E. 681); *Southern Ry. Co.* v. *Wright,* 154 *Ga.* 334 (114 S. E. 359); *Southwestern R. Co.* v. *Wright,* 156 *Ga.* 1 (118 S. E. 552); *Central of Georgia Ry. Co.* v. *Wright,* 156 *Ga.* 13 (118 S. E. 709). All of these decisions were rendered since the adoption of the Code of 1861, which went into effect on January 1, 1863, and which is indifferently referred to as the Code of 1861, or as the Code of 1863.

The principle embodied in the Civil Code (1910), § 507, is not of statutory origin, so far as we have been able to ascertain. It seems to have had its origin in codification. It has appeared in all of the Codes of this State in totibem verbis. Code 1863, § 487; Code 1868, § 549; Code 1873, § 515; Code 1882, § 515; Pol. Code 1895, § 398. It did not appear in the Codes preceding that of 1895 in the same order in which it appeared in that Code, and in which it appears in the present Code. In the Codes preceding that of 1895 it followed, but not immediately, the sections embracing the principle embodied in section 508 of the present Code. The codifiers of the Code of 1895 took this section from the position which it had occupied since the adoption of the Code of 1863, and placed it with the previous sections authorizing the levy of special and extra taxes, and in advance of section 508. The previous sections authorized the levy of special and extra taxes, and embraced the provisions appearing in sections 504 and 506 of the present Code; and the principle embraced in section 507 of the

present Code was made to follow the two above sections, being the last section in section 1, having the caption of, "Special and Extra Tax," in Article 1, with the caption, "From Taxation," and Chapter 7, with the• caption, "County Revenue." Section 508 was placed as the first section under section 2, with the caption, "Tax for County Purposes Generally; How levied," in the same article and chapter. This change of the relative position of sections 507 and 508 wrought a great change in the meaning of these two sections. It made the tax authorized by section 507, after this change of position, an extra and special tax. This change of location of the two sections changed materially the meaning of section 508 of the Code. As we have seen, it made the tax authorized by section 508 one in addition to the special and extra taxes authorized by sections 504, 506, and 507, which precede this section, as is shown above. Before this change of location of section 507, the tax authorized by section 508 was one in addition only to the special and extra taxes authorized by sections 504 and 506. Now the tax authorized by 508 is one in addition to the three special and extra taxes authorized by sections 504, 506, and 507. Thus the construction and meaning touching sections 507 and 508 were greatly changed by this transposition of these two sections.

In determining the question whether the decisions of. this court are in conflict upon the question whether or not the counties can levy more than fifty per cent. of the State tax to meet current expenses, we must bear in mind the above change in the position of these sections 507 and 508, and the necessary change in their meaning and construction. Bearing in mind the above facts, we come to consider the cases upon which counsel for the railway company rely to support the proposition that a county can not now levy a tax greater than fifty per cent. of the State tax to meet current expenses. The first of these cases, *Barlow* v. *Ordinary,* supra, was decided in 1873. The Code of 1868 was then in force. The court was dealing with the proper construction of sections 536 and 543 of that Code. Section 536 embraced the provision contained in section 504 of the present Code. Section 543 embraced the provisions contained in section 508 of the present Code, as changed by the transposition of sections 507 and 508 of the present Code. The tax dealt with in that decision was levied

for county purposes, and under the provisions now embraced in section 508, except as changed above. The court was not dealing with and was not undertaking to construe the principle now embraced in section 507, which was then embraced in section 549 of the Code of 1868. The court was dealing with the tax authorized in the provision now embodied in section 508, and held, as the law then stood, that the tax could not be levied except upon the recommendation of two thirds of the grand jury, and then could not exceed fifty per cent. of the State tax. The decision could not have been otherwise than it was, and does not conflict with any decision of this court when dealing with the proper construction and meaning of section 507 under its position in our present Code. In other words, any tax levied for county purposes under section 508 can not exceed fifty per cent. of the State tax. This is expressly declared by that section.

The decision in *Waller* v. *Perkins,* supra, was rendered in 1874; and the sections therein referred to were parts of the Code of 1873. This is the first decision, so far as we have been able to find, which deals with the construction of section 507 of our present Code, which appeared in the Code of 1873 as section 515. In dealing with it Judge McCay said: "As we read section 515 of the Code, the real difficulty is to put *any limit* to the power of the county authorities to lay taxes for the payment of debts really due. Its letter would seem to indicate that at least twenty-five per cent. of all accumulated debts must be paid every year, without any limitation as to the per cent. on the State tax that it may take to do this. But in view of long-established practice and usage of the legislature to limit the taxing power of the counties, even with the assent of the grand jury, we are of the opinion that the limitation of one hundred per cent. in this section (515) is a limit on the grand jury itself. That fifty per cent. may be laid, as provided in section 511, and with the recommendation of the grand jury it is competent, for the purposes of section 515, to go as high as one hundred per cent." In that case the court seems to have held, as the law then stood, that a tax levy under sections 511 and 515 of the Code of 1873 (sections 510 and 507 of the present Code) could not exceed 100 per cent. of the State tax. This decision was rendered by two Judges. Judge Trippe took no part in its rendition. Being a two-judge decision, it is not binding

upon this court as a precedent. Furthermore, it was made when the law governing the levy of taxes under code provisions was radically different from what it was under the Code of 1895 and is under our present Code. The codifiers of the Code of 1895 made the tax leviable under the provisions of the previous codes, which corresponded in language to section 507 of our present Code, an extra and special tax, which was not the case under preceding Codes, and they made the tax leviable under the provisions of preceding Codes, which corresponded in language with section 508 of our present Code, a tax in addition to the tax under section 507 and not a part thereof. So that decision is not in conflict with our later decisions upon this question.

In *Sullivan* v. *Yow,* supra, the attack upon the tax levy was upon the grounds that the order levying the tax did not specify the per cent. levied for each specific purpose as required by section 405 of the Code of 1895 (section 514 of Code of 1910), and that the levy, being made under section 401 of the Code of 1895 (section 510 of the Code of 1910), exceeded fifty per cent. of the State tax. It will thus be seen that this court was not dealing in that case with a levy of tax under section 507 of the present Code. In *Wright* v. *Southern Ry. Co.,* supra, the levy was made under the Civil Code (1910), § 508, for county purposes, and was for 100 per cent. of the State tax. It was properly held that under said section the tax could not be levied for more than fifty per cent. of the State tax. This court was not dealing with and did not undertake to construe section 507. The same is true of the decision in *McGregor* v. *Hogan,* supra, where this court stated that section 507 was not applicable under the facts of the case; but the question of the construction of that section was not involved and was not decided. The decision in *McMillan* v. *Tucker,* supra, does not support the position of counsel for the railway company. It supports the contrary position. This court, speaking through Chief Justice Fish, said: "The proper county authorities have power to raise a tax for county purposes, over and above the tax provided in §§ 504, 506, and 507 of the Civil Code, not to exceed fifty per cent. of the State tax for the year it is levied, provided two thirds of the grand jury at the first or spring term of their respective counties recommend such tax. Civil Code, § 508." The court distinctly recognized that the tax authorized under section

508 is one in addition to the tax which can be levied under sections 504, 506, and 507. That decision does affirm that the tax, when levied under 508, must not exceed fifty per cent. of the State tax; but it does not hold that the tax levied under section 507 can not exceed fifty per cent. of the State tax.

The decision in *Blalock* v. *Adams,* supra, does not support the view that a tax to pay accumulated debts and current expenses can not be levied in excess of fifty per cent. of the State tax. On the contrary this court held: "The proper county authorities can legally levy a tax not exceeding 100 per cent. of the State tax to pay accumulated debts and current expenses; and an item of a tax levy for such purposes should not be considered in determining whether the county authorities have exceeded their power to levy taxes for county purposes under the Civil Code (1910), § 508." In *Carter* v. *Shingler Realty Co.,* supra, this court was dealing with a tax levied under § 508. It held that a levy of a tax for tick eradication was not one for county purposes under this section, and that the sum of this tax and other items of tax levied for county purposes under that section should not exceed fifty per cent. of the State tax, "except as otherwise provided by law." This court was not dealing with section 507, which creates one of the exceptions to section 508, to which reference was briefly made in headnote 3 of that decision. The decision in *Seaboard Air-Line Ry. Co.* v. *Wright,* supra, does not support the view that a tax can not be levied under section 507 for the payment of accumulated debts and current expenses in excess of fifty per cent. of the State tax. In that case the court was dealing with "the levy of a tax for the purposes specified in section 508." That section provides for the levy of a tax for current expenses and other purposes, as we have seen. This court distinctly held that a tax levy under section 508 can not exceed fifty per cent. of the State tax, and that the tax assessment dealt with in that case "did not purport to levy a tax to pay current expenses and debts of the county, as authorized by the Civil Code (1910), § 507." The court distinctly recognized the authority to make a levy to pay current expenses and accumulated debts under section 507, the levy not to exceed 100 per cent. of the State tax.

We now pass to a consideration of the cases which lay down the doctrine that a tax to pay accumulated debts and current expenses,

under section 507, is an extra and special tax, and that the tax authorized by section 508 is one in addition to the tax authorized by section 507. In *Sheffield* v. *Chancy*, 138 *Ga.* 677 (75 S. E. 1112, this court decided that a tax could be levied under section 507, to pay accumulated debts, without the recommendation of a grand jury. Then followed the case of *Wright* v. *Southern Ry. Co.*, 146 *Ga.* 581 (supra), in which the following ruling was made: "If 100 per cent. of the State tax be not sufficient to pay the accumulated debts and current expenses of the county, the authorities have power to raise a tax for county purposes, over and above the tax of 100 per cent. of the State tax, and not to exceed 50 per cent. of the State tax for the year it is levied, 'provided two thirds of the grand jury, at the first or spring term of their respective counties, recommend such tax.' . . And see Civil Code, § 513, for enumeration of purposes for which county taxes may be assessed." That decision was not by a full bench; but the principle therein announced has been followed in other cases decided by a full bench. See *Blalock* v. *Adams, Southern Ry. Co.* v. *Wright,* and *Southwestern R. Co.* v. *Wright,* supra. We have undertaken to demonstrate that the rulings in these cases are in harmony with the true construction and meaning of section 507. We are further of the opinion that these rulings are logically sound. We followed them in *Central of Georgia Ry. Co.* v. *Wright,* supra, where we further held, that, "Under the Civil Code (1910), § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses of the county, but a levy to pay both accumulated debts and current expenses or a levy for either of these purposes must not exceed 100 per cent. of the State tax." We further held that the tax authorized by section 507 is in addition to that provided in § 508.

Under the previous decisions above referred to, we had held that under section 507 a tax not exceeding 100 per cent. of the State tax could be levied to pay accumulated debts and current expenses. It seems to us to necessarily follow that such tax could be levied to pay current expenses. If it requires a levy of 100 per cent. to meet current expenses, and there are no accumulated debts to pay, we see no good reason why such tax could not be levied to pay current expenses. If there are current expenses and accumulated debts, then one fourth at least of the accumulated debts must be

paid annually from the proceeds of the tax, and the remainder can be applied to the payment of current expenses. The power to levy a tax to pay accumulated debts and current expenses embraces the power to levy this tax to pay current expenses. In the present case it is unnecessary to decide whether the tax under section 507 can exceed 100 per cent. of the State tax. In *Central of Georgia Ry. Co.* v. *Wright,* 165 *Ga.* 1 (139 S. E. 890), the majority of this court held that more than 100 per cent. of the State tax could be levied to pay accumulated debts. Mr. Justice Gilbert and the writer dissented from this ruling. That ruling is not involved in this case, as no greater tax than 100 per cent. of the State tax was levied in the instant case for the payment of current expenses. So we are of the opinion, that, when necessary to meet lawful current expenses, it is lawful to levy a tax of 100 per cent. of the State tax; in addition to the tax authorized by § 508. ·

4. Applying the rulings above made, we are of the opinion that the judgment of the Court of Appeals was not erroneous for any reason assigned.

*Judgment affirmed. All the Justices concur, except Atkinson, J., dissenting.*

RUSSELL, C. J. I concur in the result and judgment in the case, but not in any statement from which an inference can be drawn that the tax prescribed in section 507 of the Code is restricted to only 100 per cent. upon the State tax; and I do not concur in the construction placed upon the previous decisions of the court, as embodied in the opinion, so far as relates to the rulings in *Central of Georgia Ry. Co.* v. *Wright,* 156 *Ga.* 13, and *Seaboard Air-Line Ry. Co.* v. *Wright,* 161 *Ga.* 136 (supra). It is my opinion that the decision in the first of these two cases was broader than the facts which were under review, and in so far as it stated that there might be a limit of 100 per cent. it was obiter dictum.

ATKINSON, J., dissenting. The exception is by writ of certiorari to a judgment of the Court of Appeals, holding: " 'Under the Civil Code (1910), § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses of the county.' *Central of Ga. Ry. Co.* v. *Wright,* 156 *Ga.* 13 [supra]. The court did not err in this case in 'overruling' the affidavit of illegality and ordering the fi. fa. to proceed." The

affidavit of illegality attacked items 3, 4, 5, 6, and 8 of the county tax levy, which were as follows:

"3rd. To pay sheriffs, jailers, and other officers fees legally due by county, 1/2 mill.

4th. To pay coroners' fees for holding inquests, 1 mill.

5th. To pay expenses of county for bailiffs of courts, non-resident witnesses in criminal cases, fuel, servant's hire, stationery, etc., 2/5 mill.

6th. To pay jurors a per diem compensation, 1/2 mill.

. . 8th. To pay other lawful charges against the county, 2-1/4 mills. *Thus itemized:* (a) Salaries of county court, judge, solicitor, and per diem compensation for comm'rs of roads and revenues, 1-1/10 mills. (b) To pay chmn. board of comm'rs., camp physician, and court stenographer, 3/5 mill. (c) For office supplies and records of various county officers, 1/10 mill. (d) For compensation tax-collector, tax-receiver, for expenses of election, and lunacy proceedings, 9/20 mill."

The ground of attack is that the taxes are "levied for the payment of the regular ordinary annual current expenses of the county for 1925. None of them are levied for any general county purpose other than the payment of regular, ordinary current expenses. Their aggregate is therefore limited by law to 50 per cent. of the State tax, or $2.50 per thousand; and since the aggregate levied in items 3, 4, 5, 6, and 8 is $3.75 per thousand, the levy made in said items is illegal and void to the extent of $1.25 per thousand." The several items of the tax levy which are attacked are for "current expenses" and clearly come within the meaning of "county purposes" as those terms are employed in the Civil Code (1910), §§ 507 and 508. *Seaboard Air-Line Ry. Co. v. Wright,* 157 *Ga.* 722 (supra). As all the items are included in "county purposes," the question is as to the authority of the county officers to levy a tax for "county purposes" in an amount exceeding fifty per cent. of the State tax levied for the year. It is declared in the Civil Code (1910), § 507: "When debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. every year." It is declared in § 508: "The ordi-

naries have power to raise a tax for county purposes, over and above the tax they are hereinbefore empowered to levy, and not to exceed fifty per cent. upon the amount of the State tax for the year it is levied: Provided, two thirds of the grand jury, at the first or spring term of their respective counties, recommend such tax." Section 508 has appeared in the identical language in the Code of 1863, § 481, and the Code of 1895, § 399, both of which, like the present Civil Code, were adopted by the legislature and have the binding effect of statutory law. The Code of 1895 shows the following marginal note to § 399: "Act 1821, Cobb, 184. §§ 4238, 5892" (of the Civil Code). The Civil Code of 1910 shows the following footnote: "Act 1821, Cobb, 184. §§ 4796, 6562." The Code of 1863 does not show any marginal or footnote to § 481. The act of 1821 referred to is the act found in the Acts of 1821, p. 115, which declares: "That from and after the passing of this act, the justices of the inferior court of the respective counties of this State . . shall have power, whenever in their opinion the exigencies of their respective counties may so require, to levy upon the inhabitants of any county in which the said justices may preside, a tax extraordinary of the general State tax, and shall be authorized to have the same collected by the tax-collector for any county in which such tax may be levied by them. Provided, that nothing herein contained shall be construed to authorize the justices as aforesaid to order any levy which shall exceed fifty per centum on the general State tax annually: Provided, this act shall not be construed to extend to the repeal of an act passed on the second day of December, 1820, authorizing the inferior court of the County of Oglethorpe to levy an extra tax." And "no extraordinary tax shall be levied and collected by the inferior courts, as by this act contemplated, unless two thirds of the grand jury of the county shall first recommend the same at a regular term of the superior court." The reference to this act in the adoption of the Code is helpful in arriving at the meaning of § 508. The act authorizes "a tax extraordinary of the general State tax," etc. The words just quoted, considered with their context, mean that the tax contemplated should be additional or "extra" as distinguished from the "ordinary general State tax," and should be for county purposes, but should not "exceed fifty per centum on the general State tax annually."

So it is plain that under the act of 1821 authority was granted to county authorities to levy a tax for county purposes, *limited in amount to not exceeding fifty per cent. of the State tax that might be levied for the year.* Subsequently to this act the Code of 1863 was regularly adopted by the legislature, and it contained the provisions: "The county buildings are to be erected and kept in order and repair at the expense of the county, under the direction of such justices, who are authorized to make all necessary contracts for that purpose." § 468. "It is the duty of the justices of the inferior court to erect or repair, when necessary, their respective court-houses and jails, and all other necessary county buildings, to furnish each with all the furniture necessary for the different rooms, offices, or cells, and to procure a fireproof safe or safes sufficient to hold at least all the minute books and books containing records of judgments, books of officer's bonds, all recognizances, the bonds of administrators, and guardians, the record of wills, and of appraisements and sales, unless the court-house has a fireproof vault; such books and papers, and all others that can, must be placed in such safes or vaults at night or when the officers are absent." § 469. "The justices of the inferior courts of the several counties have the power to levy an extra tax sufficient to carry into effect sections 468 and 469, without a recommendation by the grand jury, whenever the necessities arise." § 474. This was provision for levy of "an extra tax," not limited in amount and not dependent upon action of the grand jury to carry out the purposes specifically mentioned in sections 468 and 469. This, being an "extra tax" for specified purposes, was separate from any other tax that then existed, or had existed for county purposes generally, and was intended to be kept separate. So in bringing into the Code of 1863 the substance of the act of 1821 quoted above, the subject-matter was embodied in the subsequent § 481, using the following language: "The justices of the inferior court have power to raise a tax for county purposes, over and above the tax they are *hereinbefore empowered to levy,* and not to exceed fifty per cent. upon the amount of the State tax for the year it is levied, provided, two thirds of the grand jury at the first or spring term of their respective counties recommend such tax." The word "hereinbefore" clearly referred to § 474 (that being the only preceding provision purporting to authorize

levy of a tax for county purposes), and the words "over and above the tax" clearly show the intention that the "extra tax" authorized under § 474 should not diminish or affect the limit of "not exceeding 50 per cent. of the State tax" that was fixed by the act of 1821 and preserved in § 481 of the Code of 1863.

All of these sections of the Code of 1863 were carried forward into the Code of 1895, in identical language. But in the meantime the act of 1881 (Acts 1880-1881, p. 49) was adopted. The caption of this act is: "An act to enlarge the powers of county authorities in this State, as to levying taxes for pauper purposes." The body of the act declares: "That, from and after the passage of this act, the county authorities who are charged with the control of the finances of their county shall be and they are hereby authorized to levy a tax for the support of the paupers of their county, which shall not exceed twenty-five per cent. upon the amount of the State tax for the year such pauper tax is levied." This act was also confined to a particular purpose, and not intended to affect the limit of "not exceeding fifty per cent. of the State tax" that might be levied for general county purposes. So in codifying this act in the Code of 1895 it was given the position of § 397, thus preceding § 399, which was the same as § 481 of the Code of 1863. Upon reasoning as indicated above, neither the provisions for levy of the tax to support the poor, nor the adoption of the Code of 1895, affected the limit of authority to levy a tax for general county purposes, as first authorized by the act of 1821, supra. As already indicated, the Civil Code of 1910 contains all the provisions of the Codes of 1863 and 1895 cited above, and they appear in that Code as §§ 399, 400, 504, 506, 508. So, in the light of the history of section 508 of that Code, the statute authorizes the levy of tax for county purposes, including "current expenses" of the county, such as are involved in this case, but limits the amount to "not exceeding fifty per cent. of the State tax" levied for the year. This was the basis of the ruling in *Seaboard Air-Line Railway Co.* v. *Wright,* 161 *Ga.* 136 (supra), where it was held: "The levy of a tax for the purposes specified in section 508 can not exceed fifty per cent. of the State tax. This limit extends to current expenses. *Waller* v. *Perkins,* 52 *Ga.* 233; *McMillan* v. *Tucker,* 154 *Ga.* 154 (4, 9) (113 S. E. 391); *Carter* v. *Shingler Realty Co.,* 157 *Ga.* 118 (2) (120 S. E. 784)." In

*Carter* v. *Shingler Realty Co.* (just cited) the question related to the authority of the county officers to levy a tax for "tick eradication." It was held that the tax was for a county purpose as contemplated by section 508, and that authority·existed under that law for levying a tax for such purpose, but that the levy should not exceed fifty per cent. of the State tax levied for the year. It was said, Mr. Justice Hines speaking for the court: "The levy of a tax for tick eradication is one for a county purpose, and the sum of this tax and other items of county taxation must not exceed 50 per cent. of the State taxation, except as otherwise provided by law. *McMillan* v. *Tucker,* 154 *Ga.* 154 (9) (113 S. E. 391) ; Civil Code (1910), § 508. A tax for tick eradication does not fall within any exception to the above general rule. Nothing to the contrary was held in *Bahnsen* v. *Buie,* 155 *Ga.* 13 (115 S. E. 909), where this court was dealing solely with the question whether a petition for mandamus made a case which required the judge to issue a mandamus."

Section 508, not being a provision of the constitution and being only a statute, could of course be amended, or other acts could be passed which would expressly or by necessary implication authorize levy of taxes for county purposes in specific instances with or without limit in amount. Immediately preceding section 508 (which was section 481 in the Code of 1863 and section 399 in the Code of 1895) was section 507, which for convenience will again be quoted, as follows: "When debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debts in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. every year." The words "levy a tax" do not appear in this section, nor does the section purport to affect the limitation on the amount of taxes for general county purposes referred to in section 508. In this section the word "debts," as employed in the first line, is the principal noun to which the pronoun "they" in the fourth line relates; and "they" is the subject of the verb "shall be paid," as employed in the same line. The plain common-sense meaning is that when "debts" have accumulated, so that one hundred per cent. on the State tax, or the amount specially allowed by law can not pay the current expenses and the *debts* in one year, the *debts*

"shall be paid off as rapidly as possible, at least twenty-five per cent. every year." The requirement *to pay* as contained in that section does not apply at all to current expenses. Current expenses are mentioned merely as a unit of measure or an element to be taken into consideration in determining when the county affairs have gotten in such condition as would make it the duty of the county authorities to begin to *pay off* accumulated lawful indebtedness according to the expressed directions. The requirement in this section to pay accumulated debts, when the stated conditions arise for such requirement, is sufficient to imply authority to levy a tax unlimited in maximum amount except by the sound discretion of the county officials for the purpose of paying such debts. *Sheffield* v. *Chancy,* 138 *Ga.* 677 (supra) ; *Central of Georgia Ry. Co.* v. *Wright,* 165 *Ga.* 1 (4) (139 S. E. 890). But as the requirement to pay expenses in the statute does not apply to "current expenses," there is no basis in that section for implied authority to levy any tax for current expenses. In this view the mere fact of change of position in the Codes of 1895 and 1910 of what is now section 507, so that it would precede or come before what is now section 508 instead of coming after that section as the two sections appeared in the Codes that preceded the Code of 1895, could not possibly, much less necessarily, imply authority to levy a tax to pay current expenses. Aside from being a novel way so to amend section 508 that the limiting clause thereof should not extend to current expenses of the county, there is no ground to be found in section 507 for *implying* authority to levy a tax for current expenses. The judgment of the Court of Appeals should be reversed.

In rendering their decision the Court of Appeals cited the decision of this court in *Central of Georgia Railway Co.* v. *Wright,* 156 *Ga.* 13 (supra), in which it was held: "1. Under the Civil Code (1910), § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses of the county, but a levy to pay both accumulated debts and current expenses or a levy for either of these purposes must not exceed 100 per cent. of the State tax. 2. The tax authorized by the above section is in addition to that provided in the Civil Code (1910), § 508." That decision was in response to three questions propounded by the Court of Appeals. The first question was: "Where, without a recommendation from the grand jury, an order

is passed by the proper authorities imposing a county tax levy, indicating the levy of certain items to pay for current expenses, aggregating more than 50 per cent. of the State tax, is such levy for current expenses void to the extent that it exceeds 50 per cent. of the State tax? See Civil Code (1910), § 508; *Wright* v. *Central of Ga. Ry. Co., 28 Ga. App. 356* (111 S. E. 61)." The second and third questions were each propounded only in the event that the first question should be answered in the affirmative. The first question was answered in the negative; therefore the second and third questions were not before the court for decision, and it was expressly stated in the opinion that they were not ruled upon. Unfortunately the first and second headnotes were broader than the question for decision, and consequently are not binding upon this court as a precedent. It was in conflict with the decision in *Carter* v. *Shingler Really Co.,* supra, decided by the entire bench of six Justices. It did not follow the decision in *Sheffield* v. *Chancy,* supra, concurred in by all the Justices. In that case the trial court had enjoined so much of a tax levy as included separate items to pay accumulated debts, and separate items covering current expenses of the county for the year, that exceeded fifty per cent. of the State tax for that year. The judgment was reversed solely on the ground that there was implied authority under section 507 to levy a tax to pay accumulated debts. There are dicta in the opinion in *Central of Georgia Railway Co.* v. *Wright,* 156 *Ga.* 13 (supra), to the effect that the county authorities could levy a tax under section 508 up to as high as one hundred per cent. of the State tax levied for the year to meet its ordinary "current expenses." All such statements (as well as others in that decision that need not be here referred to) were directly in conflict with the older decision in *Sheffield* v. *Chancy,* supra, and the limitation expressed in said section 508, and did not correctly state the law.

If in the case now under consideration the judgment of the Court of Appeals should be affirmed, the county authorities can levy a tax for "county purposes" to include the ordinary "current expenses" enumerated at the beginning of this opinion, for an amount exceeding fifty per cent. of the State tax levied for the year. If this can be done, what has become of the limitation provided by the act of 1821 and still preserved in section 508 of the Code of 1910? Article 1, Section 3, of Chapter 7 of the Code of

1910 is: "Purposes for Which County Tax May Be Assessed. § 513. . . Objects of county tax. County taxes shall be assessed for the following purposes: 1. To pay the legal indebtedness of the county due, or to become due during the year, or past due. 2. To build or repair court-houses or jails, bridges or ferries, or other public improvements, according to the contract. 3. To pay sheriffs', jailers', or other officers' fees that they may be legally entitled to, out of the county. 4. To pay coroners all fees that may be due them by the county for holding inquests. 5. To pay the expenses of the county, for bailiffs at courts, non-resident witnesses in criminal cases, fuel, servant hire, stationery, and the like. 6. To pay jurors a per diem compensation. 7. To pay expenses incurred in supporting the poor of the county, and as otherwise prescribed by this Code. 8. To pay charges for educational purposes, to be levied only in strict compliance with the law. 9. To pay any other lawful charge against the county." This section was included in each of the several preceding Codes, and, as indicated in its caption, was intended to enumerate the purposes and objects for which county taxes shall be levied. It was not intended to add any tax for "county purposes" that was not authorized by the provisions of section 508, or to modify the limit of "not exceeding fifty per cent. of the State tax," etc., as imposed by that section. The intent was really to limit authority, that otherwise existed under the broad language employed in section 508, to the nine objects and purposes enumerated in section 513, which would include among others the ordinary annual "current expenses" of the county. In a number of the decisions by this court in which it was held that authority existed under section 508 to levy a given tax for county purposes, language has been used indicating and sometimes expressly stating that the authority existed under section 507. All such expressions as to the code section under which the authority existed were, for reasons hereinbefore stated, inaccurate, and are calculated to bring about confusion; but the inaccuracy could not have affected the decision where the authority really existed under section 508, and should not now be sufficient to cause an unwarranted construction and application of the sections 507 and 508.